UNITED STATES DISTRICT COURT
Northern District of Iowa
Western Division

| | |
|---|---|
| BRITTANY SCOTT, | : |
| | :     CASE NO. 13-4064 |
|     Plaintiff, | : |
| | : |
| v. | :     **COMPLAINT AND JURY DEMAND** |
| | : |
| CITY OF SIOUX CITY, IOWA AND PAUL | : |
| ECKERT, INDIVIDUALLY | : |
| | : |
|     Defendants. | : |

COMES NOW Plaintiff Brittany Scott, and hereby set forth the following causes of action against the Defendants:

**JURISDICTIONAL ALLEGATIONS**

1. This action is based on the provisions of 42 U.S.C. Section 2000e, et seq., commonly referred to as the Civil Rights Act of 1964 and all amendments thereto. Subject matter jurisdiction is conferred upon the Court by 42 U.S.C. Section 2000e-5(f). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367.

**VENUE**

2. The venue is proper pursuant to 42 U.S.C. 2000e-5(f) because it is brought in the judicial district of the State in which the unlawful employment practice was committed and is the judicial district where Plaintiff's employment records were maintained. Venue is also proper pursuant to 28 U.S.C. Section

1

1391(b) because it is brought in a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

3. Plaintiff Brittany Scott (hereinafter Scott) is and was at all times material hereto a citizen of the United states, a resident of Sioux City, Woodbury County, Iowa and over twenty-one (21) years of age.

4. Defendant City of Sioux City, Iowa (hereinafter City of Sioux City or City) is a city duly incorporated under the laws of the State of Iowa.

5. Defendant Paul Eckert (hereinafter Eckert) is and was at all times material hereto a citizen of the United States, a resident of Sioux City, Woodbury County, Iowa and an employee of the City of Sioux City.

## CONDITIONS PRECEDENT

6. Scott has timely filed a Complaint of Discrimination with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission (Exhibit A attached hereto and is incorporated by reference hereto as if fully set forth herein).

7. The Iowa Civil Rights Commission issued Scott a Notice of Right to Sue Letter (Exhibit B attached hereto and is incorporated by reference hereto as if fully set forth herein) and so did the Equal Employment Opportunity Commission (Exhibit C attached hereto and is incorporated by reference hereto as if fully set forth herein).

8. This Complaint is filed with the Court within ninety (90) days of receipt of the Notice of the Right to Sue letters referenced above.

9. Pursuant to Local Rule 10.1(h) personal data identifiers in the attached Exhibits A – C have been partially redacted.

## GENERAL ALLEGATIONS

10. At all times material hereto, City met the definition of "Employer" as set forth in 42 U.S.C. Section 2000e-5(b) or was working under the direction of said "Employer" or was representing the interest of said "Employer" and the Plaintiff was at all times herein set forth "employee" within the definition of said section.

11. At all material times herein, Eckert was Plaintiff's boss, either immediately or ultimately as the result of the influence he had over her job. He had the ability to terminate her and change the conditions of her employment and in fact did both.

12. On or about March 31, 1997, Scott was hired by City as an Administrative Assistant, a full-time position with benefits.

13. From 2000 to March 23, 2004 Eckert created a sexually hostile work environment for Plaintiff by virtue of the examples of misconduct described herein at paragraph 86.

14. On March 23, 2004 Plaintiff reported the sexually hostile work environment to Council Members Ferris and Forneris, who were investigating another complaint that Eckert sexually harassed several female employees.

3

15. Following her March 23, 2004 meeting with Ferris and Forneris, Eckert retaliated against Scott by removing her from the City Council's Agenda Review Committee.

16. Scott normally attended the Agenda Review meetings with her immediate supervisor, Robert Padmore, City Clerk, Paul Eckert, City Manager, and Jim Abshire, City Attorney.

17. Scott's supervisor Robert Padmore told her that Eckert no longer wanted her to attend the weekly agenda review meetings even though her job title remained the same as did her position and attending the weekly agenda review meetings was part of her job.

18. Scott had been on the committee since her initial hire date and it was her responsibility to, and she did, compile the Agenda items, create the Agenda, finalize the Agenda, and distribute the Agenda and meeting materials to the City Council members. It was also Scott's responsibility to facilitate the City Council meetings as the City Clerk, take the minutes during the meeting, run the voting software, and tape record the meetings.

19. By removing Scott from the Agenda Review Committee, Scott's employment was substantially negatively impacted by changing the scope, duties, responsibilities, and impact associated with it.

20. After March 23, 2004, Defendants further retaliated against Scott by removing her from her position as Leader Assistant to the Executive Leader of the Emergency Operations Committee at Fire Station #3.

4

21. By removing Scott from her position as Leader Assistant, Eckert diminished Scott's role within City Hall. This substantially negatively impacted Scott's employment and potential for future employment opportunities with the City.

22. In the fall of 2005, Eckert retaliated against Scott by circulating negative and untrue sexual rumors about Scott and another City of Sioux City employee, Aaron Kraft.

23. For example, Eckert had a private discussion with Aaron Kraft in which Eckert warned Mr. Kraft to stay away from Scott for reasons that were untrue including the fact that "Scott was trouble for male employees."

24. Between 2005 and 2006, Scott sought counseling to discuss the persistent sexual harassment and retaliation she endured by Eckert over the years.

25. Scott's counselor diagnosed her with depression directly related to her hostile working conditions and placed her on FMLA leave from January 31, 2006 to March 1, 2006.

26. After Scott returned to work from FMLA leave, in March 2006, she was told by City that her full-time job as Administrative Assistant in the City Clerk's Office at City Hall was being cut to part-time and that she was being transferred to a position out of City Hall located at 405 6th Street, Sioux City, Iowa and into the Public Works-Field Services Headquarters which is located at 1723 18th Street, Sioux City, Iowa.

5

27. Cutting her job to part-time was a manipulation by Defendants. It was a ruse used to transfer her to another location where she would not have contact with other employees with whom she had formed professional contacts and relationships, to a location where she would be more isolated to make it easier for Defendants to further retaliate without being held accountable. "Out of sight, out of mind."

28. The next fiscal year, Scott's former position as Administrative Assistant returned to a full-time position.

29. Eckert caused Scott's transfer, claiming to others untruthfully that Scott needed to be removed from City Hall in order to protect Robert Padmore, the Administrative Services Director/City Clerk, because Scott filed a false claim of sexual harassment against Robert Padmore (See Exhibit A, p. 25, line 6).

30. During this time, Scott was unaware of Eckert's lies and no one informed her of them. Thus she was prevented from being able to complain about or correct Eckert's lies.

31. In fact, Scott never filed a claim of sexual harassment against Robert Padmore and is not claiming one now.

32. When Eckert was asked by Ann Marie Skaggs, Eckert's Administrative Assistant, why he transferred Scott, Eckert stated that Scott was "poison" and "women like that shouldn't be around men" (See Exhibit A, p. 28, line 4).

33. When Ann Marie Skaggs asked why Eckert simply did not fire her, Eckert replied "I'm going to make her resign" (See Exhibit A, p. 27, line 23).

34. Scott's transfer to Field Services was an adverse employment action that effectively ended Scott's opportunities for advancement within City Hall, including but not limited to City Clerk.

35. Three months after Scott's transfer to Field Services, the City Clerk position was filled by Lisa McCardle.

36. After Scott was transferred away from City Hall, the hub of the activity of the City government, to a less desirable, less prominent job at Field Services in 2006, Scott overheard a conversation between then Field Services Director Judy Nicolls, and several Labor Supervisors. Judy Nicolls was having a meeting in her office with the Labor Supervisors when Scott overheard Judy Nicolls telling the Labor Supervisors that Eckert directed her to "get rid of" Scott (See Exhibit A, p. 7).

37. While making that comment, Judy Nicolls was in the direct chain of command above Scott and had the power to fire her.

38. On June 12, 2006, a new City Clerk was appointed.

39. Scott was not given the opportunity to apply for this position as it was not posted or opened up to her to apply.

40. Plaintiff would have applied for the position had she been given proper notice of the opening.

41. Had Plaintiff been working at City Hall, it is likely she would have had an opportunity to apply for the position but being assigned to the "hinterlands", she was out of the way and kept from applying for it.

7

Case 5:13-cv-04064-MWB   Document 1   Filed 07/09/13   Page 7 of 19

42. The position was filled by Lisa McCardle who was less qualified than Scott since she had no working knowledge or experience in the City Clerk's functions or office, but was rather a favorite of Eckert's.

43. Scott was more than qualified to be City Clerk because she had effectively fulfilled that role from 2000 to 2004.

44. Eckert was ultimately responsible for choosing the unqualified employee and not giving Scott a chance to apply for it.

45. On January 1, 2008, Eckert continued to retaliate against Scott by demoting her from Administrative Assistant to Administrative Secretary, which was an adverse employment action.

46. Administrative Secretary is a lower level position with a lesser pay range.

47. The City froze Scott's salary when they demoted her to Administrative Secretary.

48. In late 2008, Eckert came out to Field Services Headquarters where Scott was working, for a meeting.

49. During this time, there were two part-time Clerical Assistants employed at Field Services Headquarters and the two part-time Clerical Assistants shared a work station, which was a work station for two.

50. Scott worked out of a small office next to the Field Services Manager.

51. When Eckert saw her office, he demanded that Scott not have her own office and ordered everything be removed from her office by the end of the day.

52. Scott was required to share the work station with the two part-time Clerical Assistants, which was an adverse employment action.

53. On June 18, 2011, as a result of Eckert's directive, Scott's position as Administrative Secretary at Field Services was cut from full-time to part-time.

54. As a result of this, Scott's insurance benefits, sick/vacation/personal leave usage, life insurance options, and deferred comp contributions were taken away.

55. Scott's reduction from full-time to part-time in Field Services was not offered by the Department as a budget reduction by the Public Works Director, Chris Payer, but rather handpicked by Eckert.

56. During budget preparations, the Department submitted a memo of items that could be cut in order to meet the City Council's request.

57. A position in Public Works-Recreation at the Long Lines Family Center was offered as a reduction from a full-time Administrative Secretary to a part-time Administrative Secretary in their budget memo.

58. Recreation has two full-time Administrative Secretaries for five full-time employees.

59. Field Services has approximately 125 full-time employees and up to 60 Seasonal employees, but only one part-time Administrative Secretary at Field Services Headquarters and one AFSCME Secretary at Field Services-Utilities.

60. The Department head's offered position in Public Works-Recreation was not chosen. Scott's position in Field Services, which the Department head had not offered, was selected by Eckert for the specific purpose of injuring Plaintiff.

61. Public Works Director, Chris Payer, was not supportive of this and voiced his concern.

62. The Department offered to fund Plaintiff's position from various funding sources (Road Use Tax, General Fund, and Water/Sewer Revenue) versus the one funding source (Road Use Tax) it had been allocated in order to keep Scott's position full-time.

63. The solution was rejected by Eckert in retaliation.

64. On July 29, 2012, Scott applied for a full-time Administrative Assistant position in Public Works-Engineering.

65. On August 17, 2012, Scott interviewed for the position but on September 26, 2012 the employee who was the Administrative Secretary in the Economic Development/City Manager's office was hired for the position.

66. Eckert was the reason Scott was not hired for the position.

67. Scott was the best candidate for the job because Scott previously held the position of Administrative Assistant for almost 10 years and had an excellent working knowledge of the Public Works operation.

68. Eckert directed Public Works-Engineering to choose someone with no experience in either the position or the Department even though Scott had been recommended for the job by the person leaving, Sheri Young.

69. Young recommended Scott for the position because Scott was the "perfect candidate" and could "do 100 percent of [the job] with no training" (See Exhibit A, p. 38, lines 14-22).

70. When Eckert's former Administrative Assistant, Ann Marie Skaggs, learned of Sheri Young's recommendation of Scott, she was shocked, stating that Eckert would "never let [Scott] back in the building" (See Exhibit A, p. 38, line 24).

71. On January 1, 2013, due to her position as a part-time employee, Scott's hours were reduced to 29 hours per week. This reduced her hours from 70 hours to 58 hours in an 80-hour pay period.

72. Her hours would not have been reduced if not for the retaliatory actions of Eckert in cutting her position from full-time to part-time.

73. Scott complained of Eckert's discrimination to Robert Scott and Rhonda Capron of the City Council on January 4, 2013.

74. Robert Scott and Rhonda Capron directed Scott to file a complaint with the Iowa Civil Rights Commission.

75. Scott filed her complaint with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission on January 30, 2013.

76. The City did not conduct a reasonable or effective investigation and did nothing, in contravention of City policy, to protect Plaintiff after reporting any of her complaints.

77. Instead of taking appropriate action to end the sexually hostile work environment, Defendants either retaliated against the Plaintiff through adverse employment actions – including but not limited to denial of full-time employment, demotion, salary freeze, reduced hours from full-time to part-time, reduced part-time hours, and loss of benefits including health insurance benefits, sick/vacation/personal leave usage, life insurance options, and deferred comp contributions - or did nothing, which in effect endorsed the discrimination and allowed it to continue, to the present time, resulting in the discrimination being adopted as a de facto policy.

78. After Plaintiff reported Eckert's sexual harassment and the sexually hostile work environment in 2004, Eckert refrained from directly sexually harassing her. However, he continued to create a sexually hostile environment by the way he treated other female employees.

79. The continuing pattern and practice of sexually harassing behavior creating a sexually hostile work environment continues to the present.

80. City continues to this day to leave Eckert in his position of power as City Manager with no meaningful restrictions or oversight on how he treated Plaintiff or continues to treat her.

81. On information and belief, Plaintiff alleges that Eckert now has and has at all material times had a reputation within city government for being a womanizer and harasser and that despite this, and a previous allegation of sexual harassment by at least one other female employee that Plaintiff substantiated, the City has failed and refused to follow their own sexual harassment policies and properly investigate complaints against Eckert and terminate or otherwise solve the problem that Eckert presents.

82. While claiming to have an effective Sexual Harassment Policy, in actuality the City has put into place personnel who are either unwilling or unable to enforce the policy to protect victims. Consequently, City has, in effect, with Eckert as City Manager, created and enforced since 2000 an unwritten policy of sexual harassment tolerance and encouragement designed to protect harassers in general and Eckert in particular.

83. Included in their ineffective and unenforced policy is the policy and practice of not creating a central repository for sexual harassment and other discrimination complaints, so that the pattern and practice of harassment is more difficult to identify and correct. City essentially protects itself from scrutiny by not keeping adequate records of complaints and investigations in a central

13

file, making it more difficult for victims to prove a pattern and practice of discrimination.

84. During the entire course of events described here, Defendants' conduct has been a continuing pattern and practice of discriminatory behavior.

**BACKGROUND OF SEXUAL HARASSMENT-HOSTILE WORK ENVIRONMENT**

85. Plaintiff realleges paragraphs 1-84 as if fully set forth herein.

86. Defendant City, through Eckert, subjected Plaintiff to work in a hostile and pervasive atmosphere of sexual discrimination and harassment. The harassment of Plaintiff included, but is not limited to, the following:

    a. Eckert subjected Scott to periodic but regular unwanted and unwelcome sexual advances and physical contact during work from 2000 to the first part of 2004, including but not limited to:

        1. In the summer of 2000, Eckert began emailing Scott personal emails and communicating with her in an unprofessional and very personal tone that was designed to create an unwelcome sexual overtone in Eckert's daily employment relationship with Plaintiff. For example, after Eckert learned Scott was divorced, Eckert told Scott to talk with him privately at work in a City conference room. He didn't tell Scott what it was about. When he got Scott alone in the conference room, Eckert only asked Scott about her personal life and divorce.

        2. In approximately the fall of 2000, Scott worked out in the City's Fitness Room in the basement of City Hall. When Eckert found out Scott often worked out after City Council meetings, he started showing up while

14

Scott was working out, when they would be the only two people in the room. Eckert would be there virtually every time Scott worked out. He was not invited by Scott to be there and his persistence and presence carried and created a sexual overtone that was unwelcome to Scott.

3. In January of 2001, as the result of Eckert trying to foster a private affair with Scott, Scott stopped working out in the Fitness room. Eckert made Scott feel very uncomfortable. His presence and attempted interaction with Scott was clearly the result of his sexual interest in Scott. It was not the typical interest one would expect from one's boss and Plaintiff did not reciprocate the interest. After Scott stopped working out there, Eckert continually asked Scott when she was going to work out again until November of 2001. His requests were persistent, pervasive, blatant attempts to engage Scott in an affair which she had no interest in and refused.

4. From 2002 through 2003, Eckert touched and rubbed Scott's arms and shoulders. This was unwelcomed by Scott and made her very uncomfortable.

5. From 2002 through 2004, Eckert emailed Scott messages with sexual innuendos in an attempt to further pursue an intimate affair with Scott. This added to the sexual overtones Eckert placed on Plaintiff's time at work.

6. Eckert persistently and pervasively asked Scott to email him jokes in an attempt to further pursue a private affair with Scott. Eckert clearly tried to transform their working together into an intimate affair.

7. While at work, Eckert told Scott that he was bored one weekend and drove by her house.

8. Eckert persistently and pervasively asked Scott out for drinks.

9. Eckert constantly wanted to wager with Scott when the City Council meetings would adjourn and a prize would

15

> always be given (i.e. pop, steak, drink). The prize always involved spending more time with Eckert. It was like the Seinfeld episode where no matter what the outcome of the wager, Eckert would win more time (with Scott). This had the effect that he was essentially but vaguely, and in a way he could deny his motivation, manipulating Scott into a date with him.
>
> 10. Eckert persistently and pervasively commented on Scott's physical appearance.
>
> 11. When Scott reported Eckert's inappropriate sexually harassing behavior to Robert Padmore, her supervisor, nothing came of it.
>
> 12. Scott attended City Council meetings away from City Hall as part of her job. After one particular meeting, Eckert gave Scott a ride back to City Hall but he turned it into a date-like tour on the way there. He stopped for ice cream at Hardees and then drove around the city until he eventually parked overlooking Stonesthrow Hill. While parked, Eckert directed the conversation with Scott to her personal life and other non-work related topics. Scott was uncomfortable and told Eckert that she needed to get back to City Hall to work.

87. DEFENDANTS' conduct was a pattern and practice of unwanted and unwelcome pervasive sexual harassment creating a hostile work environment.

## COUNT I
## RETALIATION
## BRITTANY SCOTT AGAINST CITY OF SIOUX CITY AND PAUL ECKERT

88. Plaintiff repleads paragraphs 1-87 as if fully set forth herein.

89. Instead of taking appropriate action to end the sexually hostile work environment, Defendants retaliated against the Plaintiff through adverse employment actions, up to and including, denial of full-time employment,

16

demotion, salary freeze, reduced hours from full-time to part-time, reduced part-time hours, and loss of benefits including health insurance benefits, sick/vacation/personal leave usage, life insurance options, and deferred comp contributions.

WHEREFORE, Plaintiff prays that the Court enter judgment against Defendants declaring the conduct engaged in by the Defendants to be in violation of the Plaintiff's rights and award damages as follows:

- a. Plaintiff be awarded damages to compensate, reimburse and make whole the Plaintiff for all the past and present benefits Plaintiff should have received had it not been for Defendants' illegal conduct including but not limited to back pay with interest, front pay, benefits, training, promotions and seniority;

- b. Plaintiff be awarded compensation for past and future suffering, emotional distress, loss of enjoyment of life and other non-pecuniary losses;

- c. Plaintiff be awarded punitive damages in an amount appropriate to punish these Defendants for willful and malicious misconduct and necessary to deter these Defendants from engaging in such misconduct in the future;

- d. Plaintiff be awarded all past and future medical and counseling expenses;

- e. Plaintiff be awarded injunctive relief preventing Defendants from future unlawful practices, including terminating Defendant Eckert from his employment with the City;

- f. As injunctive relief or as such other relief as it just and equitable, that the Court order the City to hire a non local expert in sexual harassment and discrimination to evaluate the City's policies and procedures and make recommendations to revise them to bring the City to compliance with the state and federal law and to require the City to implement those policies and procedures;

17

g.  Plaintiff be awarded the costs and expenses of this action and award PLAINTIFF reasonable attorney's fees as provided in 42 U.S.C. Section 2000e-5(l);

h.  Plaintiff be awarded interest provided by law;

i.  Plaintiff be awarded and reinstated to her full time job as Administrative Assistant in Field Services, taken from her in 2008, including salary, pay raises, and other employment benefits commensurate with the position had she not been removed; and

j.  Such other and further relief as the Court may deem proper.

## COUNT II
## IOWA CODE CHAPTER 216
## BRITTANY SCOTT AGAINST ALL DEFENDANTS

COMES NOW Plaintiff for her cause of action against the Defendants, and allege:

90. Plaintiff repleads paragraphs 1-89 as if fully set forth herein.

91. Defendants' actions constitute unlawful retaliation against Plaintiff for complaining about the sexual harassment and for filing complaints with the Iowa Civil Rights Commission and the Federal Equal Employment Opportunity Commission.

92. The individual Defendants aided and abetted said discrimination and retaliation in violation of Iowa Code Chapter 216.

WHEREFORE, Plaintiff prays that the Court enter judgment against Defendants, declaring the conduct engaged in by Defendants to be in violation of Plaintiff's rights under Iowa Code Chapter 216 and award damages as follows:

18

a. Plaintiff be awarded damages to compensate, reimburse and make whole the Plaintiff for all the past and present benefits Plaintiff should have received had it not been for Defendant's illegal conduct including, but not limited to, back pay with interest, front pay, benefits, training, promotions and seniority;

b. Plaintiff be awarded compensation for past and future suffering, emotional distress, loss of enjoyment of life and other non-pecuniary losses;

c. Plaintiff be awarded all past and future medical and counseling expenses;

d. Plaintiff be awarded the cost and expenses of this action and award Plaintiff reasonable attorney's fees;

e. Prejudgment interest as provided by Iowa law; and

f. Such other and further relief as the Court may deem proper, including but not limited to the equitable relief requested in Count I.

## JURY DEMAND

COME NOW Plaintiff and pursuant to Rule 38(b) of the Federal Rules of Civil Procedure demand a trial by jury of all issues alleged in this Complaint.

Respectively submitted this 9th day of July, 2013.

/s/Stanley E. Munger
MUNGER, REINSCHMIT & DENNE, L.L.P.
600 Fourth Street, Suite 303
PO Box 912
Sioux City, IA 51102
(712) 233-3635
(712) 233-3649 (fax)
Attorney E-mail: stanmunger@mrdlaw.net

Scott, Brittany/pleadings/complaint

19