# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BRITTANY SCOTT,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF SIOUX CITY, IOWA and<br>PAUL ECKERT, Individually,<br><br>    Defendants. | No. C13-4064-MWB<br><br>**ORDER** |

## *I.* *INTRODUCTION*

Defendant City of Sioux City (the City) has filed a motion (Doc. No. 26) for leave to amend its answer. Plaintiff has filed a resistance (Doc. No. 27) and the City has filed a reply (Doc. No. 28). Plaintiff then filed a motion for leave to file a response to the City's reply, which I granted. Plaintiff filed her sealed response that day. (Doc. No. 34). I gave the City the opportunity to submit a reply, which it did on May 9, 2014. (Doc. No. 38). I held a hearing on May 28, 2014. Plaintiff appeared personally and with her attorney, Stanley Munger. Randall Stefani appeared for the City, along with City Attorney Nicole Jensen-Harris. Stacey Hall appeared for defendant Paul Eckert, who takes no position on the motion. The motion is fully submitted.

## *II.* *BACKGROUND*

Scott has been employed by the City since 1997. She filed this action on July 9, 2013, alleging unlawful retaliation under Iowa and federal law as a result of reporting alleged sexual harassment by Eckert during her employment with the City. Her complaint

describes a series of adverse employment actions that date back to March 2004 and continue to the present. Doc. No. 1 at 4-12.

On September 4, 2013, the City filed its answer (Doc. No. 5) in which it denied Scott's claims of retaliation and asserted various affirmative defenses. On November 18, 2013, I adopted the parties' joint, proposed scheduling order (Doc. No. 7) which, among other things, established January 2, 2014, as the deadline for motions to amend pleadings. The City filed its present motion April 10, 2014, more than three months after that deadline expired.

In an affidavit in support of the motion, City Attorney Nicole Jensen-Harris states that a current City employee requested a meeting with her on March 17, 2014. That meeting was held on March 20, 2014. The current City employee brought a former City employee to the meeting. A City Council member also attended. The former employee provided what the City repeatedly calls "direct evidence"[1] of misconduct by Scott. The City claims this "direct evidence" shows (a) Scott claimed and received payment for hours not actually worked and (b) Scott spent substantial amounts of time working on personal matters while at work. While the City's supporting papers do not describe the time period of these alleged events, during the hearing the City stated that they occurred during and after 2012.

Jensen-Harris states that the March 20, 2014, meeting was the first time she became aware of "direct evidence" that Scott had engaged in alleged misconduct of this nature. She further states that she has since learned other City officials had prior knowledge of similar accusations, but those accusations were based on hearsay or rumors. After the March 20 meeting, Jensen-Harris immediately advised the City's counsel in this case about the new "direct evidence." The City then commenced a "due diligence

---

[1] At the hearing, the City clarified that the direct evidence includes the former employee's own observations of the alleged misconduct, along with photographs and documentary evidence.

2

inquiry" to determine whether it should seek leave to add an additional affirmative defense.

The City contends the new evidence would, if substantiated, justify Scott's termination from employment. On March 28, 2014, the City's counsel contacted Scott's counsel to notify him about the new evidence and of its intention to file a motion to amend its answer. The City then filed its motion to amend after being advised that Scott would resist the motion. The proposed new defense reads as follows:

> 8. Since the time of the adverse employment actions Plaintiff has placed at issue in her Complaint, Defendant City of Sioux City, Iowa has acquired evidence of misconduct by Plaintiff that justifies Plaintiff's termination from Plaintiff's employment with the City. As such, Plaintiff's right to any future damages should be cut off as of the date the City discovered such misconduct on Plaintiff's part.

Doc. No. 26-1 at 8. This is often referred to as the "after-acquired evidence" defense.

### III. ANALYSIS

#### A. *Applicable Law*

Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). There is, however, no absolute right to amend a pleading. *See, e.g., Hammer v. Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003); *Becker v. Univ. of Nebraska*, 191 F.3d 904, 908 (8th Cir. 1999); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994). Notwithstanding Rule 15's liberal amendment policy, a motion to amend may be denied on grounds of "undue delay, bad faith or dilatory motive on the part of the movant, … undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998).

When a motion to amend is filed beyond the scheduling order's deadline for such motions, Rule 16(b) comes into play, as well. Scheduling orders may be modified only for "good cause." Fed. R. Civ. P. 16(b)(4); *see also* Local Rule 16(f) ("The deadlines

established by the Rule 16(b) and 26(f) scheduling order and discovery plan will be extended only upon written motion and a showing of good cause."). "The interplay between Rule 15(a) and Rule 16(b) is settled in this circuit." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). The liberal amendment standard contained in Rule 15(a) applies when a motion for leave to amend is filed within the time permitted by the court's scheduling order and discovery plan. On the other hand, "[i]f a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008); *see also In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437-38 (8th Cir. 1999) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.") (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).

In *Sherman*, the Eighth Circuit Court of Appeals explained the Rule 16(b) "good cause" standard as follows:

> "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006); *see also* Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (concluding that there was "no need to explore beyond the first criterion, [diligence,] because the record clearly demonstrate[d] that Bradford made only minimal efforts to satisfy the [scheduling order's] requirements"). Our cases reviewing Rule 16(b) rulings focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order. *See, e.g., Rahn*, 464 F.3d at 822 (affirming the district court's denial of Rahn's request for a modification of the scheduling order because the record made clear that Rahn did not act diligently to meet the order's deadlines); *Barstad v.*

> *Murray County*, 420 F.3d 880, 883 (8th Cir. 2005) (affirming the district court's denial of leave to amend the Barstads' complaint under Rule 16(b) because the Barstads had eight months to request an amendment of the scheduling order and "knew of the claims they sought to add when they filed the original complaint"); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (affirming, under Rule 16(b), the district court's denial of Freeman's motion to amend her complaint because she provided no reasons why the amendment could not have been made earlier or why her motion to amend was filed so late).

*Sherman*, 532 F.3d at 716-17. Applying this standard, the court held that leave to add a new defense should have been denied, as such leave was not sought until almost eighteen months after the deadline to amend pleadings had expired. *Id*. at 717-18.

Here, as noted above, the deadline for motions to amend pleadings expired January 2, 2014. Doc. No. 7. Because the City filed its motion to amend more than three months after that date, it must satisfy the requirements of both Rule 15(a) and Rule 16(b).

## B.  *Arguments of the Parties*

The City argues there is good cause to allow the amendment because it did not become aware of evidence of Scott's alleged misconduct until March 20, 2014, and that it acted quickly thereafter to investigate the situation and file a motion for leave to amend. While the City acknowledges that accusations were made about Scott in the past, it has submitted affidavits from several City officials who indicate those prior accusations were based on hearsay, rumors and, in one case, an anonymous letter. According to the City, all of the accusations were either unfounded or resolved. The City further contends that no City officials were previously aware of any accusations that Scott was paid for hours she did not work. Thus, it is the City's position that it had no admissible evidence that would have allowed it to raise the proposed new defense in good faith until March 20, 2014.

Scott disagrees. She notes that the prior accusations against her related to (1) the appearance of a possibly-improper relationship with her then-supervisor, (2) working

5

from home without authorization and (3) a City vehicle being parked at Scott's residence. Scott argues that because some City officials were aware of these prior accusations long ago, the City should have been considering and investigating defenses based on her alleged misconduct from the outset of this case.

Scott also argues the proposed amendment should not be allowed because the City has not yet terminated her employment. She suggests that allowing the City to add this defense before termination occurs would create troublesome precedent because it would allow defendant employers to use mandatory discovery resources to conjure up reasons to reduce their damages. Finally, Scott argues that the amendment should not be allowed because it would cause unfair prejudice to her. She contends that allowing the City to add a defense at this stage of the case would require significant new discovery. Scott states she has taken over 20 depositions and has served dozens of written discovery requests on the defendants. She has also responded to numerous discovery requests served by the City. Scott argues that allowing the proposed new defense would require second depositions of many witnesses, along with additional written discovery. She notes that all of this would have to be completed in a short period of time, as the current discovery deadline is August 1, 2014.

*C.     Discussion*

While the parties focused their arguments on Rule 16, and especially the "diligence" requirement, I must first consider whether the amendment is permissible under Rule 15. In particular, I will examine whether the City's proposed new defense should be rejected on grounds of futility.

It is often stated that a proposed amendment is futile if it could not survive a Rule 12 motion to dismiss. *See In re Senior Cottages of Am., LLC,* 482 F.3d 997, 1001 (8th Cir. 2007); *Van Stelton v. Van Stelton,* 904 F. Supp. 2d 965, 969 (N.D. Iowa 2012); *Quality Refrigerated Services, Inc. v. City of Spencer,* 908 F. Supp. 1471, 1489 (N.D. Iowa 1995). "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Of course, in this case the proposed amendment is a new defense, not a new cause of action. Generally, affirmative defenses need not be plead with the same level of specificity that Rule 12(b)(6) requires with regard to a plaintiff's causes of action. *See, e.g., F.D.I.C. v. Dosland*, No. C13-4046-MWB, ___ F.R.D. ___, 2013 WL 6728844, at *4-5 (N.D. Iowa Dec. 23, 2013). Nonetheless, Rule 12(f)[2] permits a court to strike an affirmative defense that is "legally insufficient," meaning, for example, that it is foreclosed by statute or other binding authority. *Id.* at *3-4; *accord United States v. Dico, Inc.*, 266 F.3d 864, 879–80 (8th Cir. 2001) (striking affirmative defense that was contrary to Eighth Circuit Court of Appeals precedent). In this context, then, the proposed amendment is "futile" if it is so "legally insufficient" that it could not survive a Rule 12(f) motion to strike. My consideration of this issue requires an analysis of the scope and limits of the after-acquired evidence defense.

In *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995), the Supreme Court considered the relevance of after-acquired evidence of employee misconduct when an employer had been found liable under the Age Discrimination in Employment Act (ADEA) for unlawfully terminating an employee.[3] The Court concluded that if after-acquired evidence of wrongdoing would have led to termination on legitimate grounds

---

[2] Rule 12(f) authorizes the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

[3] Although *McKennon* involved a claim brought under the ADEA, the Eighth Circuit Court of Appeals has held the defense also applies to Title VII claims. *See Sellers v. Mineta*, 358 F.3d 1058, 1061-62 (8th Cir. 2004) (quoting *McKennon* in which the Court stated, "[t]he substantive, antidiscrimination provisions of the ADEA are modeled upon the prohibitions of Title VII.").

had the employer known about it, backpay should be calculated from the date of the unlawful discharge to the date the new information was discovered. *Id.* at 362. The Court further stated: "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at 362-63.[4]

The Eighth Circuit Court of Appeals has addressed the after-acquired evidence doctrine in several post-*McKennon* cases. *See, e.g., Harris v. Chand,* 506 F.3d 1135, 1139 (8th Cir. 2007) (affirming district court's admission of after-acquired evidence); *E.E.O.C. v. Dial Corp.*, 469 F.3d 735, 745 (8th Cir. 2006) (confirming that the employer must prove that it would have terminated the employee upon discovery of the evidence); *Sellers v. Mineta,* 358 F.3d 1058, 1064 (8th Cir. 2004) (addressing relevance of post-termination misconduct to the remedies of front-pay and reinstatement); *Ross v. Garner Printing Co.*, 285 F.3d 1106, 1112 (8th Cir. 2002) (holding that the jury was properly allowed to consider after-acquired evidence of misconduct as a limitation on the relief to award on retaliation and breach-of-contract claims). These cases, along with *McKennon*, establish that the defense applies when (1) an employee is discharged for an allegedly-unlawful reason and (2) the employer later learns of other misconduct that, by itself, would have resulted in discharge had it come to the employer's attention. In that situation, even if the employee prevails on liability (*i.e.,* proves that his or her discharge was illegal), the employee's backpay award will be limited to the period of time "from

---

[4] The Iowa Supreme Court has adopted the *McKennon* analysis for cases arising under the Iowa Civil Rights Act. *See Walters v. U.S. Gypsum Co.*, 537 N.W.2d 708, 711 (Iowa 1995). Thus, while Scott brings her claims under both federal and Iowa law, neither party has suggested that the City's proposed new defense would apply differently to Scott's state law claims.

8

the date of the unlawful discharge to the date the new information was discovered." *McKennon*, 513 U.S. at 362.[5]

With this framework in mind, it is clear that the City's effort to assert an after-acquired evidence defense in this case is misplaced. The reason is simple: the City has not yet actually decided to discharge Scott. Because, as the City acknowledges, the defense only applies if Scott's employment is actually terminated, the defense is purely anticipatory at this stage of the case. I share Scott's concern that allowing an employer to assert an after-acquired evidence defense before terminating employment would permit the employer to take advantage of expansive discovery tools – far beyond those available outside the context of a lawsuit – to investigate possible misconduct by a current employee.[6] If the defense may be asserted on an anticipatory basis, any employer sued by a current employee for discrimination or retaliation could assert that defense and use the discovery process to fish for evidence that might justify termination.[7]

While it is clear that the City's proposed new defense has no application to the current facts of this case, I note that it will not apply *even if* the City eventually discharges

---

[5] As one federal district court has explained, the after-acquired evidence defense requires proof of three elements: (1) the plaintiff was guilty of severe misconduct or wrongdoing; (2) the defendants were unaware of her conduct; and (3) the defendants in fact would have terminated the plaintiff on those grounds alone if they had known of her alleged misconduct at the time of her discharge. *See Pennell v. Vacation Reservation Ctr., LLC*, 4:11CV53, 2011 WL 6960814, at *2 (E.D. Va. Sept. 20, 2011) (citing *McKennon*, 513 U.S. at 362-63).

[6] The Supreme Court acknowledged this concern in *McKennon*. *See McKennon*, 513 U.S. at 363 ("The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one . . . ."). However, the Court concluded that a court's authority to award attorney's fees and invoke the appropriate provisions of the Federal Rules of Civil Procedure would be sufficient to deter most abuses. *Id.*

[7] I am not suggesting that this is the City's motivation here, and there is no evidence that this is the case. However, I have little doubt that some employers would take advantage of the opportunity to assert an anticipatory after-acquired evidence defense in hopes of using it to discover evidence supporting discharge during the course of a lawsuit.

Scott based on the recently-discovered evidence. As discussed above, the after-acquired evidence defense addresses evidence that is discovered subsequent to a challenged termination. *See also Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 204-05 (3d Cir. 1996) (finding the district court erred by allowing employer to assert after-acquired evidence defense when evidence of misconduct was known to employer at the time of discharge and was the purported reason for the discharge itself). In *Delli Santi*, the employee complained of sex and age discrimination. After she submitted her complaints, her employer discovered that she had misrepresented gas expenses for her company car and terminated her employment. *Id.* at 195-96. Delli Santi then filed suit claiming retaliation. A jury returned a verdict in favor of Delli Santi, finding that CNA discharged her in retaliation for her complaints and that CNA failed to prove it would have discharged her because of the inflated expense reports. *Id.* at 198. However, the district court then granted CNA's motion for judgment as a matter of law (and conditionally granted its motion for a new trial), holding that "CNA proved as an affirmative defense that, despite retaliatory intent, it would have discharged Delli Santi in any event." *Id.* at 194. The Third Circuit Court of Appeals reversed, finding that there was no "after-acquired" evidence because the alleged wrongdoing was discovered prior to discharge and indeed, was the alleged motivation for the discharge decision. *Id.* at 205. This case presents similar, pre-termination circumstances. The after-acquired defense simply does not apply when evidence of alleged misconduct is discovered before discharge and forms the employer's stated basis for that discharge.

Because the City's proposed after-acquired evidence defense has no relevance to the facts of this case, it is "legally insufficient" pursuant to Rule 12(f) and, therefore, futile for purposes of Rule 15(a). As such, the City's motion to amend must be denied. *See Bell*, 160 F.3d at 454 (proposed amendment may be rejected on grounds of futility). In light of this finding, I need not analyze the Rule 16(b) "good cause" factors of diligence and prejudice.

## IV. CONCLUSION

For the reasons set forth herein, the City's motion (Doc. No. 26) to amend its answer is **denied**.

**IT IS SO ORDERED.**

**DATED** this 4th day of June, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE