**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

BRITTANY SCOTT,

          Plaintiff,

vs.

CITY OF SIOUX CITY, IOWA, and
PAUL ECKERT, Individually,

          Defendants.

No. C 13-4064-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE
DEFENDANT CITY'S MOTION FOR
SUMMARY JUDGMENT AND
MOTION TO EXCLUDE
TESTIMONY BY PLAINTIFF'S
EXPERTS, BOTH JOINED BY THE
INDIVIDUAL DEFENDANT**

———————————————

**TABLE OF CONTENTS**

I.   **INTRODUCTION**................................................................2
    *A.*    *Factual Background* ...............................................2
    *B.*    *Procedural Background* ...........................................5

II.  **LEGAL ANALYSIS** ..................................................6
    *A.*    *The City's Motion For Summary Judgment* ....................6
        *1.*   *Arguments of the parties*....................................6
        *2.*   *Standards for summary judgment*.......................8
        *3.*   *Analysis* ..................................................9
            *a.*   *Elements of a retaliation claim*.................9
            *b.*   *The continuing violation claim*...............10
                *i.*   *The* **Morgan** *standard* .................10
                *ii.*   *Application of the* **Morgan** *standard*.............13
                *iii.*   *Scott's authorities*.......................15
            *c.*   *A "hostile retaliatory environment" claim* ..................19
            *d.*   *Timely incident claims* ........................22
        *4.*   *Summary*................................................24

    **B.**     *The City's Motion To Exclude Testimony Of Experts* .................... 25
         **1.**     *Additional factual background* ........................................ 25
         **2.**     *Arguments of the parties* .............................................. 26
         **3.**     *Analysis* ................................................................... 27
             *a.*     *Applicable standards* ......................................... 27
             *b.*     *Application of the standards* ................................. 29
                 *i.*     *Dr. Brown's opinions* ................................. 29
                 *ii.*     *Dr. Fitzgerald's opinions* ............................. 30
         **4.**     *Summary* ................................................................. 32
**III.**     **CONCLUSION** ............................................................. 32

A long-time city employee asserts claims, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216, that, over a period of almost nine years, she was retaliated against by the city and the former city manager for her 2004 complaint that the city manager sexually harassed her from 2000 to 2004. The city has moved for summary judgment on the employee's retaliation claims and to exclude testimony from two of her experts, in whole or in part. The former city manager has joined in these motions, and the employee has resisted them.

## I.     INTRODUCTION

### A.     Factual Background

I set forth here only those facts, disputed and undisputed, sufficient to put in context the parties' arguments concerning the defendants' Motion For Summary

Judgment. Thus, the "universe" of facts stated here is considerably smaller than the complete set of facts, undisputed and disputed, set forth in the parties' various statements of fact. Unless otherwise indicated, the facts recited here are undisputed, at least for purposes of summary judgment. If necessary, I will discuss additional factual allegations, and the extent to which they are or are not disputed or material, in my legal analysis.

Plaintiff Brittany Scott, a long-time employee of the defendant City of Sioux City, Iowa, was hired by the City on or about March 31, 1997, as a full-time administrative assistant. Scott alleges that the former city manager, defendant Paul Eckert, sexually harassed her from 2000 until March 23, 2004. In March 2004, in an investigative interview arising from allegations that Eckert had sexually harassed various female employees, Scott complained that Eckert had sexually harassed her. Scott concedes that "active" harassment by Eckert abruptly stopped after her complaint. She alleges that, instead, retaliation by Eckert and the City began, and continued over the next several years.

Specifically, Scott contends that the defendants' retaliation consisted of the following actions:

- at some time between September 2004 and March 2005, Eckert removed Scott from the City Council's Agenda Review Committee;

- in the fall of 2005, Eckert removed Scott from her position as Leader Assistant to the Executive Leader of the Emergency Operations Committee at Fire Station #3;

- in the fall of 2005, Eckert spread rumors of a sexual nature about Scott and another City employee, Aaron Kraft;

- in March 2006, the City transferred Scott to a position out of City Hall, in the Public Works-Field Services Headquarters (Field Services);

- on June 12, 2006, the City appointed a new City Clerk without giving Scott the opportunity to apply for the position;

- on January 1, 2008, Eckert demoted Scott from Administrative Assistant to Administrative Secretary;

- in late 2008, Eckert required Scott to give up her private office and share a work station with two part-time Clerical Assistants;

- on June 18, 2011, the City cut Scott's Administrative Secretary position in Field Services from full-time to part-time;

- on September 26, 2012, the City hired another candidate, Melissa Uhl, for a full-time position as an Administrative Assistant in Public Works-Engineering, for which Scott had applied on July 29, 2012; and

- on January 1, 2013, the City reduced Scott's hours from 35 hours per week to 29 hours per week, ostensibly because of changes to the definition of "full-time employee" for health insurance purposes under the Affordable Care Act.

The parties agree that only the last two incidents occurred after April 7, 2012, which was 300 days before the filing date of Scott's administrative complaint with the Iowa Civil Rights Commission (ICRC).

Scott contends that this list is not exhaustive, however, because Eckert and the City took various other actions that she contends were also retaliatory. Her allegations of additional retaliatory actions consist of the following:

- Eckert took adverse actions against her friends who were City employees;

- in 2006, Eckert gave false explanations to another City employee about the reason for transferring Scott to Field Services;

- in 2006, Eckert told the City's Public Works Director to "get rid of" Scott, when Scott was transferred to Public Works, and the Public Works Director then told Scott's immediate supervisor to "get rid of" her;

- from 2006 forward, City employees called Scott "The Black Widow";

- in 2011, Eckert told his assistant that Scott was "poison to men" and that he was going to make her resign;

- from an unspecified date "to the present," City employees circulated rumors about Scott; and

- from 2006 through 2012, the City denied Scott the opportunity to get a better job, because Scott would have felt like a "sitting duck" for Eckert to get rid of her, if she had left her job at Field Services.

Plaintiff's Response To Defendants' Statement Of Undisputed Material Facts (docket no. 59-2), ¶ 7.

### B. *Procedural Background*

On July 19, 2013, Scott filed her Complaint (docket no. 1) in this court, asserting claims, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, and the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216, that the City and Eckert retaliated against her, over a period of almost nine years, for her 2004 complaint that Eckert sexually harassed her between 2000 and 2004. The City filed the Motion For Summary Judgment (docket no. 46), now before me, on Scott's retaliation claims, on September 5, 2014. Eckert filed his Joinder (docket no. 50) in the City's Motion For Summary Judgment on September 8, 2014. Scott filed her Resistance (docket no. 59) on October 22, 2014. The City filed its Reply (docket no. 62) in further support of its Motion For Summary Judgment on November 3, 2014, and Eckert filed his Joinder (docket no. 65) in the City's Reply that same day.

On September 5, 2014, the City also filed its separate Motion To Exclude And/Or Limit The Testimony Of Plaintiff's Expert Witnesses (Motion To Exclude Testimony Of Experts) (docket no. 48), seeking to exclude all or parts of the testimony from two of Scott's experts. Eckert also filed a Joinder (docket no. 51) in that motion on September 8, 2014, and Scott filed her Resistance (docket no. 55) to it on October 6, 2014. The City filed a Reply (docket no. 56) in further support of its motion on October 16, 2014.

A jury trial in this matter is currently set to begin on March 30, 2015.

## II. LEGAL ANALYSIS

Resolution of certain issues in the City's Motion For Summary Judgment[1] will necessarily dictate the resolution of overlapping portions of the City's Motion To Exclude Testimony Of Experts. Therefore, I will consider, first, the City's Motion For Summary Judgment.

### A. The City's Motion For Summary Judgment

#### 1. Arguments of the parties

In support of its Motion For Summary Judgment, the City argues that Scott has alleged a series of "discrete" acts, only the last two of which fall within the applicable statute of limitations period. The City contends, further, that there is no genuine issue of material fact as to any causal relationship between those two incidents and any complaints of sexual harassment that Scott made years ago. In the alternative, the City

---

[1] Although Eckert joined in each of the City's Motions, he did not assert any separate or additional arguments in support of either one. Therefore, I will simply refer to the City's Motions and the City's arguments.

contends that under no circumstances can Scott recover damages for time-barred incidents, even if she alleges some timely incidents of arguable retaliation. The City also contends that the defendants are entitled to summary judgment to the extent that Scott's claims are based on retaliation for "participation" in an investigation of alleged harassment, rather than "opposition" to alleged harassment.

Scott denies that the instances of retaliation were merely "discrete" acts. Instead, she argues that they were part of an ongoing, continuous, or "over-arching" policy and practice of Eckert and the City to retaliate against her, so that she is entitled to assert claims and recover damages for acts committed more than 300 days prior to the filing of her ICRC Complaint in 2012. She also contends that there are genuine issues of material fact as to the causal connection between her complaints of sexual harassment in 2004 and retaliatory conduct as late as 2012 and 2013, because of this continuous policy and practice. She also contends that the last two incidents are actionable, even if others are not, because she made an additional complaint to the City's Human Resources Director about retaliation by Eckert in the summer of 2012, shortly before those incidents. Scott argues that there is also "direct" evidence of Eckert's retaliatory intent from his comments to his administrative assistant that Scott was "poison to men" and that his goal was to make Scott resign, which she argues tightens the causal connection, notwithstanding the lapse of time. Indeed, she argues that the record shows that Eckert used his power to retaliate against her whenever he had the opportunity to do so. Finally, she contends that she has generated genuine issues of material fact that Eckert did actually influence the last two adverse employment actions that she has alleged and that she was better qualified than the person selected to fill the full-time position as an Administrative Assistant in Public Works-Engineering.

In reply, the City contends that labeling a series of time-barred acts as a "practice" does not convert them from "discrete" acts into a "continuing violation." The City also

contends that the evidence to which Scott points is not "direct" evidence, primarily because Eckert did not have direct control over the final employment decisions that Scott contends were retaliatory. The City also argues that, despite Scott's contentions that she was the better candidate for the full-time position as an Administrative Assistant in Public Works-Engineering, no reasonable jury could find that the City's reasons for choosing another candidate were merely a pretext.

### 2.    *Standards for summary judgment*

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). In response, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burden, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v.*

> *DeStefano*, ‒‒‒U.S. ‒‒‒‒, 129 S. Ct. 2658, 2677, 174 L. Ed.
> 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380,
> 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal
> quotations omitted). "Credibility determinations, the
> weighing of the evidence, and the drawing of legitimate
> inferences from the facts are jury functions, not those of a
> judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530
> U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000),
> quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255,
> 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . "'Where
> the record taken as a whole could not lead a rational trier of
> fact to find for the nonmoving party, there is no genuine issue
> for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*,
> 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012). However, summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

I will apply these standards here.

### 3. *Analysis*

#### a. *Elements of a retaliation claim*

As the Eighth Circuit Court of Appeals has explained,

> To establish a retaliation claim under Title VII, an
> employee must show: (1) she engaged in protected conduct;
> (2) a reasonable employee would have found the retaliatory
> action materially adverse; and (3) the materially adverse

action was causally linked to the protected conduct. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir.2011).

*Musoff v. J.C. Penny Co., Inc.*, ___ F.3d ___, ___, 2014 WL 6845105, *3 (8th Cir. Dec. 5, 2014). As to the third element, "a retaliatory action is materially adverse if it would likely dissuade a reasonable worker from engaging in protected conduct." *Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 767 F.3d 744, 749 (8th Cir. 2014) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68-69 (2006)).

### b.    *The continuing violation claim*

A timely charge with the appropriate administrative agency is also mandatory before a plaintiff can pursue a Title VII or ICRA retaliation claim. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-110 (2002); 42 U.S.C. § 2000e-5; Iowa Code § 216.15(13). Thus, a plaintiff must ordinarily file an administrative charge within a certain number of days—in this case, 300 days—of the alleged unlawful employment practice to pursue a claim in court. 42 U.S.C. § 2000e-5; Iowa Code § 216.15(13). Under the "continuing violation" doctrine, however, certain kinds of claims are not time-barred, "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122.

### i.    *The* **Morgan** *standard*

Under the governing law, then, a key question here is whether the allegedly retaliatory actions on which Scott principally relies were a "series of separate but related acts" forming part of the same unlawful employment practice, amounting to a "continuing violation," or "discrete acts" within the meaning of *Morgan*. *See* 536 U.S. at 115-117. Scott cannot assert a "continuing violation" based on past isolated instances of retaliation, even where the effects continue into the limitations period. *See Delaware State Coll. v.*

*Ricks*, 449 U.S. 250, 258 (1980); *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1271–72 (8th Cir. 1990).

As the Eighth Circuit Court of Appeals has explained,

> The object of the exhaustion requirement [in 42 U.S.C. § 2000e-5(e)(a), requiring the filing of an administrative charge within a specified period of the unlawful employment practice] is "the alleged unlawful employment practice." The Supreme Court in *Morgan* explained that the term "practice" in this phrase does not connote "an ongoing violation that can endure or recur over a period of time." 536 U.S. at 110–11, 122 S.Ct. 2061. Rather, other subsections of Title VII define the sorts of actions that qualify as "unlawful employment practices," and include among such practices "numerous discrete acts." *Id.* at 111, 122 S.Ct. 2061.

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012). In *Morgan*, the Supreme Court identified "discrete acts" as including "termination, failure to promote, denial of transfer, or refusal to hire," and explained that each such "incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114; *see also Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 638 (2007) (reading *Morgan* as defining a "discrete act" as "an act that in itself 'constitutes a separate actionable "unlawful employment practice"' and that is temporally distinct" (quoting *Morgan*, 536 U.S. at 114) and as "distinguish[ing] between 'discrete acts' of discrimination and a hostile work environment," where the latter "typically comprises a succession of harassing acts, each of which 'may not be actionable on its own'" (quoting *Morgan*, 536 U.S. at 115-16)), *abrogated on other grounds by* U.S. Pub. L. No. 111-2 (Jan. 29, 2009).

As the Eighth Circuit Court of Appeals has also explained, in *Morgan*,

11

> The Court reasoned that the term "practice" does not convert "related discrete acts into a single unlawful practice for the purposes of timely filing." [*Morgan*, 536 U.S. at 111]. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id*. at 114, 122 S.Ct. 2061.

*Richter*, 686 F.3d at 851.

Thus, the consequences of *Morgan* are the following:

> The Tenth Circuit explained that *Morgan* . . . "abrogates the continuing violation doctrine as previously applied to *claims of discriminatory or retaliatory actions* by employers, and replaces it with the teaching that *each discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted*." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir.2003).

*Richter*, 686 F.3d at 851 (emphasis added).

Specifically, the court in *Richter* held that, in the case before it, because each "discrete act" is a different unlawful employment practice for which a separate charge is required, and the plaintiff had alleged as the basis for her retaliation claim a "discrete act" that occurred *after* she filed her administrative complaint of discrimination, she had failed to exhaust her retaliation claim, and the district court had correctly dismissed that claim on that basis. *Id*.; *see also id*. at 851-53 (also rejecting that plaintiff's contention that she was not required to exhaust her retaliation claim, because it was based on conduct that was "like or reasonably related to" a timely claim in her administrative charge). Similarly, in *Betz v. Chertoff*, 578 F.3d 929 (8th Cir. 2009), the court rejected a "continuing violation" retaliation claim, because the incidents of alleged retaliation had occurred *before* the expiration of the limitations period and they were "discrete acts," so that they were no longer actionable. 578 F.3d at 937 (also noting that the claim was not a "hostile work environment claim" to which the Court in *Morgan* had applied the

12

"continuing violation" doctrine).  The court explained, "Under the Court's holding in *Morgan*, 'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'"  *Id*. at 938 (quoting *Morgan*, 536 U.S. at 113)).[2]

### ii.        Application of the **Morgan** *standard*

Here, of the ten incidents on which Scott principally relies to establish her retaliation claim, six simply are not "materially adverse" and, thus, are not "actionable." *Musoff*, ___ F.3d at ___, 2014 WL 6845105 at *3.  No reasonable juror could conclude that removing Scott from the City Council's Agenda Review Committee; removing Scott from her position as Leader Assistant to the Executive Leader of the Emergency Operations Committee at Fire Station #3; spreading rumors of a sexual nature about Scott and another City employee, Aaron Kraft; transferring Scott to a position out of City Hall, in the Public Works-Field Services Headquarters (Field Services); appointing a new City Clerk without giving Scott the opportunity to apply for the position; and/or requiring Scott to give up her private office and share a work station with two part-time Clerical Assistants was "likely to dissuade a reasonable worker from engaging in protected conduct."  *See Chavez-Lavagnino*, 767 F.3d at 749.[3]  Thus, these incidents or actions

---

[2] Scott concedes that, in *Farmland Foods v. Dubuque Human Rights Comm'n*, 672 N.W.2d 733 (Iowa 2003), the Iowa Supreme Court elected to follow *Morgan*, so that it appears that the federal and state analyses of "continuing violations" and "discrete acts" are the same.

[3] There is also no allegation that any of these allegedly retaliatory actions continued into the limitations period, that is, after April 7, 2012.

simply cannot provide the basis for Scott's retaliation claim, even if they are not simply "isolated."[4]

In contrast, the remaining four of those ten allegedly retaliatory incidents *are* "materially adverse." A reasonable juror could readily conclude that demoting Scott from Administrative Assistant to Administrative Secretary; cutting Scott's Administrative Secretary position in Field Services from full-time to part-time; hiring another candidate actionable for a full-time position as an Administrative Assistant in Public Works-Engineering, for which Scott had applied on July 29, 2012; and/or reducing Scott's hours from 35 hours per week to 29 hours per week, ostensibly because of changes to the definition of "full-time employee" for health insurance purposes under the Affordable Care Act, was "likely to dissuade a reasonable worker from engaging in protected conduct." *See Chavez-Lavagnino*, 767 F.3d at 749. The rub here is that, under *Morgan*, each of these acts was a "discrete act." *See* 536 U.S. at 114 (defining "discrete acts" as including "termination, failure to promote, denial of transfer, or refusal to hire"). Thus, each was actionable at the time that it occurred, and Scott's failure to assert administrative charges based on the "discrete acts" that occurred *before* the statutory time period began to run—the demotion and the cutting of Scott's hours—means that her time to do so for those actions has expired. *Richter*, 686 F.3d at 851; *Betz*, 578 F.3d at 937-38. Scott asserted only the failure to hire her for a full-time position in September 2012 and reducing her hours for purposes of the Affordable Care Act on January 1, 2013, within her limitations period.

---

[4] Indeed, Scott's allegations of these retaliatory actions would not satisfy even the more liberal standard for pleading "adverse actions" in support of "retaliation" claims advocated by one commentator. *See* Joseph A. Seiner, *The Trouble With* Twombly: *A Proposed Pleading Standard For Employment Discrimination Cases*, 2009 U. ILL. L. REV. 1011, 1041-51.

Nor is the situation any different as to the additional allegedly retaliatory incidents that Scott identifies in resistance to the City's Motion For Summary Judgment. *See* Plaintiff's Response To Defendants' Statement Of Undisputed Material Facts (docket no. 59-2), ¶ 7. Again, no reasonable juror could conclude that taking adverse actions against Scott's friends who were City employees; giving false explanations to another City employee about the reason for transferring Scott to Field Services; telling the City's Public Works Director to "get rid of" Scott, when Scott was transferred to Public Works, and the Public Works Director then telling Scott's immediate supervisor to "get rid of" her, in the absence of any actions actually to do so; calling Scott "The Black Widow"; telling an assistant that Scott was "poison to men" and that Eckert was going to make her resign; circulating rumors about Scott; and/or denying Scott the opportunity to get a better job, because Scott would have felt like a "sitting duck" for Eckert to get rid of her, if she had left her job at Field Services was "likely to dissuade a reasonable worker from engaging in protected conduct." *See Chavez-Lavagnino*, 767 F.3d at 749. Indeed, the last allegation is not an allegation of an "action" by the defendants at all, but simply a statement of Scott's perception. Thus, these additional incidents or actions simply cannot provide the basis for Scott's retaliation claim, even if they are not simply "isolated."

### iii. Scott's authorities

The authorities cited by Scott also are not to the contrary. Scott cites *Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 327 F.3d 771 (8th Cir. 2003), in support of her assertion that her claim is a "continuing violation." The decision of the Eighth Circuit Court of Appeals in *Mems* is unavailing, however. In that case, the court explained, generally,

> The question for liability as well as damages after *Morgan* is whether the acts complained of are part of the same unlawful employment practice. If so, then all of the acts may be considered so long as one of the acts falls within the

limitations period. If not, then only the acts which fall in the limitations period may be considered.

*Mems*, 327 F.3d at 784. The court in *Mems* added, however, that *Morgan* distinguished between "discrimination and retaliation claims," which are based on "discrete acts," and harassment claims, which may involve a "continuing violation":

> The Supreme Court explained [in *Morgan*] *the difference between discrete discriminatory acts and a series of separate acts that together constitute an "unlawful employment practice,"* 42 U.S.C. § 2000e–5(e)(1). *Id.* at 2069–76. A discrete act "'occurred' on the day that it 'happened'" and constitutes its own unlawful employment practice. *Id.* at 2070. Examples of discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 2073. "Discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 2071.
>
> *On the other hand, the Supreme Court opined that a hostile work environment claim typically involves a series of separate acts, which together constitute the unlawful employment practice. Id.* at 2074. Because these acts are part of the same claim, the Court held that an employer may be liable for all of the acts, and in order for the claim to be timely, only one act in the series must have occurred within the limitations period. *Id.*
>
> The Court explained that first "[a] court's task is to determine whether the acts about which an employee complains are part of *the same actionable hostile work environment practice*," and second the court must determine whether any act that is part of the same claim falls within the statutory time period. *Id.* at 2076.

*Mems*, 327 F.3d at 784-85 (emphasis added).

Thus, the court in *Mems* did not read *Morgan* to apply the "discrete acts" vs. "continuing violation" analysis to a plaintiff's discrimination (or retaliation) claim, but only to apply that analysis to a plaintiff's hostile environment claim. Indeed, the court in *Mems* actually applied this analysis only to the hostile environment claim of the plaintiff before it, not to his discrimination claim. *See id.* at 785-86. On the other hand, in *Mems*, the court identified certain acts allegedly part of the hostile environment that were within the limitations period as discrete acts that were separately actionable as discrimination, but held that "th[o]se discrete acts, under *Morgan*, cannot be used to revive pre-limitations acts for the purposes of recovering damages because they are separate and distinct unlawful employment practices." *Id.*; *accord Richter*, 686 F.3d at 851 (discrete acts are actionable only if an administrative charge concerning them is brought before the limitations period expires); *Betz*, 578 F.3d at 937-38 (same). Thus, *Mems* does not support Scott's contention that a "continuing violations" analysis is applicable to her retaliation claim, where the actionable incidents of retaliation on which Scott relies are "discrete acts."

Also unavailing is Scott's reliance on *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001), *cert. denied sub nom. Potter v. Fitzgerald*, 536 U.S. 922 (2002), and *Austion v. City of Clarksville*, 244 F.App'x 639, 647 (6th Cir. 2007). In *Fitzgerald*, the Second Circuit Court of Appeals did recognize that a claim based on a "continuous practice and policy of discrimination" may be timely, under the continuing violation theory, if the last act pursuant to that practice or policy was timely, *see* 251 F.3d at 359, and appeared to apply that policy to a "retaliation" claim, *see id.* at 361. The problem

with Scott's reliance on *Fitzgerald* is that *Fitzgerald* is a pre-*Morgan* decision.[5] Furthermore, *Fitzgerald* is contrary to the conclusions of the Eighth Circuit Court of Appeals in *Richter* and *Betz* that, after *Morgan*, because each "discrete act" is a different unlawful employment practice for which a separate charge is required, where, as here, the plaintiff has alleged "discrete acts" outside of the limitations period as the basis for her retaliation claim, she has failed to exhaust that part of her retaliation claim, and that part of the claim is correctly dismissed on that basis. *Richter*, 686 F.3d at 851; *Betz*, 578 F.3d at 937-38.

Scott's reliance on the unpublished opinion of the Sixth Circuit Court of Appeals in *Austion* is also unavailing, because the court held in that case that the plaintiff had filed his administrative charge within a month of the alleged retaliation, so that the allegedly retaliatory act occurred within the limitations period. 244 F.App'x at 649. Also, although the court did recognize that "a continuing over-arching policy of discrimination" may make a discrimination claim timely under the "continuing violation" doctrine, it explained,

> To establish a longstanding and demonstrable policy of discrimination, *a plaintiff "must demonstrate something more than the existence of discriminatory treatment in his case." Haithcock v. Frank*, 958 F.2d 671, 679 (6th Cir.1992). *A plaintiff must establish that the employer's "standing operating procedure" included intentional discrimination against the class of which plaintiff was a member. Sharpe*, 319 F.3d at 269 (quoting *EEOC v. Penton Indus. Publ'g Co.*, 851 F.2d 835, 838 (6th Cir.1988)). "Unrelated incidents of discrimination will not suffice to invoke this exception; rather there must be a continuing over-arching policy of

---

[5] The Supreme Court denied the petition for writ of *certiorari* in *Fitzgerald* on June 17, 2002, just a week after *Morgan* was decided, on June 10, 2002.

discrimination." *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1106 (6th Cir.1995). Generally this exception is strictly construed and is satisfied only where the defendant has a known policy or rule supporting discrimination. . . . After thoroughly reviewing the statistical and documentary evidence submitted to the district court, we find that the evidence fails to demonstrate that Clarksville maintained a "standard operating procedure" of discriminating against African–Americans. Accordingly, the district court erred in applying the continuing-violations theory, and we hold that Austion's 1998 demotion claim was not timely filed under Title VII.

*Austion*, 244 F.App'x at 647-48 (emphasis added). The plaintiff's showing in *Austion* was inadequate, and Scott's is far less compelling, because she has pointed to nothing in this record as demonstrating that the City (or Eckert) maintained a "standard operating procedure" of retaliating against women who complained about alleged sexual harassment by Eckert, the class of which she was purportedly a member, rather than her own individual claim of such retaliation. *Id.*; *see also Torgerson*, 643 F.3d at 1042 (explaining that "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 (1986))).

The City is entitled to summary judgment on Scott's "retaliation" claims to the extent that they are based on untimely incidents, because the "continuing violation" theory is not applicable to Scott's claims.

### c.    *A "hostile retaliatory environment" claim*

In *Morgan*, "[t]he Supreme Court held that the continuing violation doctrine applies in *hostile work environment* claims, where, although one incident may not support a claim, the claim may be supported by a series of incidents that occur over a period of

time." *Betz*, 578 F.3d at 937-38 (citing *Morgan*, 536 U.S. at 122)). Circuit Courts of Appeals to consider the question—which do not include the Eighth Circuit Court of Appeals—have also recognized, however, a cause of action for "retaliatory harassment" or "retaliatory hostile work environment." *See, e.g., Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (per curiam); *Wiley v. Glassman*, 511 F.3d 151 (D.C. Cir. 2007) (per curiam); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007) (citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)); *Jensen v. Potter*, 435 F.3d 444 (3d Cir. 2006); *Noviello v. City of Boston*, 398 F.3d 76, 91 (1st Cir. 2005); *Stutler v. Ill. Dep't of Corrs.*, 263 F.3d 698, 703 (7th Cir. 2001); *Ray v. Henderson*, 217 F.3d 1234, 1245–46 (9th Cir. 2000); *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1265 (10th Cir. 1998); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 366 (4th Cir. 1985); *see also* Maria Danaher, *Federal Court Circuits Recognize Cause Of Action For "Retaliatory Hostile Work Environment,"* 14 No. 16 LAWYERS J. 8 (Aug. 10, 2012); *Bryan v. Chertoff*, 217 F.App'x 289, 294 (5th Cir. 2007) (declining to consider whether to recognize such a claim); *but see Scusa v. Nestle USA Co., Inc.*, 181 F.3d 958, 969 (8th Cir. 1999) (appearing to cast doubt on the viability of such a claim). As the Eleventh Circuit Court of Appeals has explained, a plaintiff asserting such a claim must prove that "the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment or create an abusive working environment." *Gowski*, 682 F.3d at 1311; *but see* Joel A. Kravetz, *Deterrence v. Material Harm: Finding The Appropriate Standard To Define An "Adverse Action" In Retaliation Claims Brought Under The Applicable Equal Employment Opportunity Statutes*, 4 U. PA. J. LAB. & EMP. L. 315 (Winter 2012) (advocating, instead of a "severe or pervasive" standard, a standard for retaliation claims based on whether the allegedly

20

retaliatory conduct would reasonably deter a charging party or others from engaging in protected activity).  This seems to be the primary method to plead around the "discrete discriminatory acts" doctrine created by *Morgan* for a series of allegedly retaliatory actions for which no independent charges of discrimination were timely filed.

I need not consider the viability of such a claim in this case, however, because Scott not only did not expressly plead such a claim, nor did she assert it in her resistance to summary judgment, she expressly pleaded *away* from such a claim—possibly for strategic reasons.  Scott pleaded her Title VII claim on the basis that the defendants "retaliated against the Plaintiff through adverse employment actions, up to and including, denial of full-time employment, demotion, salary freeze, reduced hours from full-time to part-time, reduced part-time hours, and loss of benefits including health insurance benefits, sick/vacation/personal leave usage, life insurance options, and deferred comp[ensation] contributions."  Complaint, Count I.  Thus, Scott based her retaliation claim on "discrete acts," each individually actionable, not on a series of incidents that collectively amounted to retaliatory harassment, even though any one incident may not have supported a claim.  *Betz*, 578 F.3d at 937-38 (citing *Morgan*, 536 U.S. at 122).

Scott's law firm is a highly skilled trial firm with years of experience in employment discrimination litigation. Had her attorneys sought to plead a "retaliatory hostile work environment" claim in the Complaint, they clearly could have done so. Moreover, both defense law firms have superb reputations for their longstanding, extensive employment discrimination defense practices statewide.  Had they even had a whiff or hint of a notion that Scott was seeking to bring a "retaliatory hostile work environment claim," they would have vigorously attacked it in their summary judgment motions and extensive briefing.  Finally, if Scott's attorneys believed such a claim was in her Complaint, they could have used this claim to try to rebut the City's Summary

Judgment Motion. For reasons known only to Scott's counsel, they did not. A "retaliatory hostile work environment" claim simply is not in this case.

At this late juncture, it is also too late for Scott to seek leave to amend to assert such a claim, well after the deadline to amend pleadings, as such a claim would likely require the reopening of discovery and possible delay of the March 30, 2015, trial date. *See, e.g., Catipovic v. Turley*, No. C 11-3074-MWB, 2014 WL 5454570, *6-*7 (N.D. Iowa Oct. 25, 2014) (slip op.) (explaining that leave to amend after the deadline is subject to a Rule 16(b) "good cause" requirement, considering, *inter alia*, the "diligence" of the party seeking leave for the belated amendment and the "prejudice" to the opposing party). Reopening discovery, a new round of summary judgment motions, and a delay of the trial would each, individually, prejudice the defendants, and all three would cause extraordinary prejudice.

### d. Timely incident claims

The conclusions above leave Scott's federal and state "retaliation" claims dependent upon her ability to generate genuine issues of material fact that two incidents in 2011 and at the end of 2012, which were within 300 days of the filing of her administrative charge, were causally related to her 2004 complaint about Eckert's sexual harassment. *See University of Texas Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, ___, 133 S.Ct. 2517, 2534 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). Those timely incidents are the following: (1) the City hiring another candidate, Melissa Uhl, on September 26, 2012, for a full-time position as an Administrative Assistant in Public Works-Engineering, for which Scott had applied on July 29, 2012; and (2) the City reducing Scott's hours from 35 hours per week to 29 hours per week, ostensibly

because of changes to the definition of "full-time employee" for health insurance purposes under the Affordable Care Act, on January 1, 2013.

As to the second of these timely incidents, Scott has failed to generate any genuine issue of material fact that the cut in her hours because of changes to the definition of "full-time employee" for insurance purposes was a pretext for retaliation. *Torgerson*, 643 F.3d at 1042 (explaining that "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 (1986))). Although she contends that Eckert had the power to exempt her from the cut in hours, she has not identified a single one of the almost three dozen part-time employees who were working over 30 hours a week who was exempted from the hours adjustment under the new definition of "full-time employee" for insurance purposes. Thus, there is no reasonable inference from the present record that the reduction in her hours for "insurance purposes," or the failure to exempt her from that reduction, was retaliatory, and the defendants are entitled to summary judgment on Scott's retaliation claims to the extent that they rely on this incident.

The situation is different, however, as to the first of the timely incidents of alleged retaliation, the City hiring another candidate, Melissa Uhl, on September 26, 2012, for a full-time position as an Administrative Assistant in Public Works-Engineering, for which Scott had applied on July 29, 2012. Notwithstanding the City's evidence that Eckert was not directly involved in the decision-making process for that employment decision, Scott has pointed to specific evidence giving rise to reasonable inferences that Eckert was involved. That evidence includes, among other things, evidence that the decision-makers, an interview committee, were all well aware of friction between Eckert and Scott; evidence that the chairperson of the interview committee went so far as to ask

Eckert if Eckert would oppose interviewing Scott for the position and whether Eckert would oppose Scott's return to a position in City Hall; evidence that the chairperson of the committee believed that Eckert could "veto" the committee's choice; and evidence that Eckert exercised complete de facto control over hiring and firing decisions in City departments, even where he technically did not have such authority.

I conclude, further, that this evidence and other evidence is sufficient to generate genuine issues of material fact on retaliation, despite the long period of time between the protected activity in 2004 and the allegedly retaliatory conduct in 2012, although such a long time period might ordinarily break any causal connection. This is so, because this and other evidence suggests that Eckert's allegedly retaliatory animus was still very much alive in 2012. Indeed, as the Eighth Circuit Court of Appeals has pointed out, under *Morgan*, untimely discriminatory acts may constitute relevant "background evidence in support of a timely claim." *Saulsberry v. St. Mary's Univ. of Minnesota*, 318 F.3d 862, 866 (8th Cir. 2003) (citing *Morgan*, 536 U.S. at 113). Although the untimely actions that Scott argued were part of a continuing violation are not actionable, they are evidence that helps to bridge the causation "gap" between a complaint of sexual harassment in 2004 and an allegedly retaliatory action in 2012.

### 4. Summary

Thus, the City's Motion For Summary Judgment is granted as to Scott's retaliation claims to the extent that those claims seek relief for allegedly retaliatory incidents before April 7, 2012. The City's Motion For Summary Judgment is also granted as to Scott's relation claims to the extent that those claims seek relief for the City reducing Scott's hours from 35 hours per week to 29 hours per week, ostensibly because of changes to the definition of "full-time employee" for health insurance purposes under the Affordable Care Act, on January 1, 2013. The City's Motion For Summary Judgment is denied, however, to the extent that Scott seeks relief for the denial of the full-time position of

Administrative Assistant in Public Works-Engineering in 2012 in retaliation for complaints of sexual harassment by Eckert during a 2004 investigation of such allegations against Eckert.

## B.     The City's Motion To Exclude
### Testimony Of Experts

In its Motion To Exclude Testimony Of Experts, the City challenges the admissibility of certain opinions of two of Scott's expert witnesses in this case, Dr. Ralph Brown and Dr. Louise Fitzgerald.  Some additional factual background about these experts' opinions is relevant to the analysis of the City's challenge.

### 1.  Additional factual background

The City contends, and Scott does not dispute, that Dr. Brown has prepared an Economic Loss Appraisal with respect to Scott's purported loss of earnings at issue in this case.  Dr. Brown's report includes three alternative loss calculations:  Alternative 1 calculates loss based on "what if" Scott had not been demoted from Administrative Assistant to Administrative Secretary in January 2008; Alternative 2 calculates loss based on "what if" Scott had been promoted to the City Clerk position in July 2006; and Alternative 3 calculates loss based on "what if" Scott had been hired as the Administrative Assistant in Public Works in September 2012.  The City also contends, and Scott also does not dispute, that in each of the three alternative loss calculations, Dr. Brown included a calculation for front pay for each year from 2015 through 2039.

The City contends, and Scott does not dispute, that Dr. Louise Fitzgerald intends to offer opinions at trial regarding the causes and consequences of sexual harassment in the workplace.  The City asserts that Dr. Fitzgerald's report analyzes (1) whether Scott's behavior was consistent with a sexual harassment victim, and (2) whether the City's sexual harassment policy and remediation program are adequate.  Somewhat more

specifically, the City asserts that Dr. Fitzgerald opines as follows: (1) that Scott's behavior is consistent with that of sexual harassment victims and that it was "reasonable" "[f]rom a psychological perspective," and (2) that the City's anti-harassment policy, procedures, and investigations are deficient for various reasons.

### 2.  Arguments of the parties

In its Motion To Exclude Testimony of Experts, the City seeks exclusion of Dr. Brown's opinions about damages "scenarios" that include damages for time-barred conduct, that is, Dr. Brown's Alternatives 1 and 2, where Scott cannot obtain relief for such time-barred conduct, and damages for future lost wages and benefits, where front pay is not an issue for the jury.  The City also seeks exclusion of Dr. Fitzgerald's opinions about the typical reactions and responses of harassment victims and the organizational practices that facilitate and inhibit harassment, on the ground that such opinions are simply irrelevant, where Scott asserts only retaliation claims, not harassment claims.

Much of Scott's resistance to exclusion of Dr. Brown's testimony on damages "scenarios" that include damages for time-barred conduct is based on a reiteration of her contention that her retaliation claim is based on a "continuing violation," which I rejected, above.  As to the City's remaining contentions concerning Dr. Brown, Scott concedes that Dr. Brown's front-pay opinions should not be submitted to the jury, because, if she obtains a favorable verdict, the question of front pay is for the court.

In contrast, Scott argues that all of Dr. Fitzgerald's challenged opinions are relevant, even if she can only recover for the retaliatory failure to hire her for the full-time Administrative Assistant position in 2012, because those opinions will help her satisfy the element of her retaliation claim requiring her to prove that she had a good faith, reasonable belief that she had been subjected to sexual harassment when she complained about it.  She contends that she must prove this element, because the City has directly challenged all of her allegations that she reasonably believed she was the

victim of sexual harassment. Scott also argues that Dr. Fitzgerald's opinions about how Scott's reaction to harassment was consistent with what is to be expected of harassment victims continue to be relevant, and do not merely vouch for Scott's credibility. She contends that this is so, because prior, albeit untimely, acts of retaliation are relevant "background" information, even if her claim is limited to the denial of the full-time position in 2012. Furthermore, she contends that Dr. Fitzgerald's opinions are relevant in light of her complaints about the City's lack of any response to her renewed complaint of retaliation in 2013.

In reply, the City contends that, as to Dr. Fitzgerald's opinions, it has never denied that Scott had a good-faith, reasonable belief that Eckert sexually harassed her, even while denying that Eckert did, in fact, sexually harass Scott and denying that Scott actually reported any such belief to City officials in 2004. Indeed, the City contends that the reasonableness of Scott's belief that she was sexually harassed should not even be submitted to the jury. The City also contends that, even if Scott has some retaliation claim based on circumstances after she purportedly complained again about retaliatory conduct in 2013, Dr. Fitzgerald's opinions are not admissible, because failure to investigate a new claim of retaliation is not, itself, the basis for an actionable retaliation claim.

### 3. *Analysis*

#### a. *Applicable standards*

As the Supreme Court has explained, Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony and requires the district court to serve as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). More specifically, Rule 702 of the Federal Rules of Evidence provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702 (emphasis added).

The Eighth Circuit Court of Appeals has stated that the standard for what expert testimony is relevant and helpful under Rule 702 is "low," that is, that the expert's evidence should be admitted if it has any tendency to make a fact of consequence more or less probable. *United States v. Holmes*, 751 F.3d 846, 851 (8th Cir. 2014) (citing FED. R. EVID. 401). Nevertheless, the court has reiterated that "'[w]here the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous.'" *United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 20110 (quoting *Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir. 1984) (per curiam)). In short, to satisfy the relevance requirement of Rule 702 and *Daubert*, "'the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue.'" *Smith v. Bubak*, 643 F.3d 1137, 1138 (8th Cir. 2011) (emphasis added) (quoting *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010)). Thus, for example, expert testimony is relevant where such testimony is required to establish an element of a claim. *See, e.g., Barrett*, 606 F.3d at 981 (concluding that a plaintiff in a toxic tort strict liability case is required to establish causation through expert testimony). Finally,

the court has also observed that expert evidence, even if relevant, is subject to exclusion if its potential for prejudice substantially outweighs its probative value. *Holmes*, 751 F.3d at 851; *see also* FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is substantially outweighed by its potential for prejudice); *Coutentos*, 651 F.3d at 821 (considering whether the district court had properly excluded expert evidence under Rule 403, after affirming exclusion of the expert's evidence as irrelevant under Rule 702).

### b.     *Application of the standards*

### i.     *Dr. Brown's opinions*

I concluded, above, that Scott cannot recover for retaliation based on any allegedly retaliatory conduct that occurred before April 7, 2012. I also concluded that Scott's demotion from Administrative Assistant to Administrative Secretary in January 2008 and her lack of a promotion to the City Clerk position in July 2006, the bases for Dr. Brown's Alternatives 1 and 2, were "discrete acts" for which her time to assert a claim had expired long before Scott filed her administrative charge of retaliation. Thus, Dr. Brown's damages "scenarios" set out in his Alternatives 1 and 2 simply are not relevant to any element of Scott's remaining retaliation claim. *See Smith*, 643 F.3d at 1138 (explaining that, to satisfy the relevance requirement of Rule 702 and *Daubert*, "'the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue'" (quoting *Barrett*, 606 F.3d at 980)); and compare Barrett, 606 F.3d at 981 (concluding that a plaintiff in a toxic tort strict liability case is required to establish causation through expert testimony). Furthermore, Scott concedes that Dr. Brown's front pay calculations are not relevant to any jury question, so that they may not be offered in proceedings before the jury, because front pay is a matter for the court to determine, if Scott prevails on her claim. *Salitros v. Chrysler Corp.*, 306 F.3d 562, 571 (8th Cir. 2002) ("Front pay is decided by the court, not the jury."). Even then, only Dr. Brown's

front pay calculations based on conduct that occurred within the limitations period would be relevant.

Therefore, the City's Motion To Exclude Expert Testimony is granted as to the challenged opinions of Dr. Brown set out in his Alternatives 1 and 2. Dr. Brown may testify to his damages calculations in Alternative 3, which is based on a timely incident of alleged retaliation.

### ii. Dr. Fitzgerald's opinions

The analysis is only a little more complicated as to the City's request for exclusion of Dr. Fitzgerald's testimony in its entirety. First, there is no sexual harassment claim at issue in this case, only a retaliation claim, so that Dr. Fitzgerald's opinions (1) that Scott's behavior is consistent with that of sexual harassment victims and that it was "reasonable" "[f]rom a psychological perspective," and (2) that the City's anti-harassment policy, procedures, and investigations are deficient for various reasons have no direct relevance to any claim at issue in this case. *See Smith*, 643 F.3d at 1138 (explaining that, to satisfy the relevance requirement of Rule 702 and *Daubert*, "'the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue'" (quoting *Barrett*, 606 F.3d at 980)); *and compare Barrett*, 606 F.3d at 981 (concluding that a plaintiff in a toxic tort strict liability case is required to establish causation through expert testimony). Scott is correct that, ordinarily, to prevail on a retaliation claim, a plaintiff must show, inter alia, that she had good faith, reasonable belief that underlying challenged conduct violated Title VII. *See Brannum v. Missouri Dep't of Corr.*, 518 F.3d 542, 547–49 (8th Cir. 2008). Scott is also correct that, under *Morgan*, untimely discriminatory acts may constitute relevant "background evidence in support of a timely claim." *Saulsberry*, 318 F.3d at 866 (citing *Morgan*, 536 U.S. at 113). Neither assertion makes Dr. Fitzgerald's opinions relevant here, however, where the City represents that it has not and will not challenge the good faith or reasonableness

of Scott's belief that Eckert sexually harassed her. Under these circumstances, I agree with the City that whether or not Scott had such a good faith, reasonable belief should not even be submitted to the jury.[6] Finally, even to the extent that untimely incidents of harassment or retaliation provide "background evidence" in support of a timely claim, I conclude that the potential for prejudice and confusion of the issues—arising primarily from misdirection about what conduct of the defendants is properly at issue—substantially outweighs any probative value of Dr. Fitzgerald's opinions. *See Holmes*, 751 F.3d at 851 (observing that expert evidence, even if relevant, is subject to exclusion if its potential for prejudice substantially outweighs its probative value); *see also* FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is substantially outweighed by its potential for prejudice); *Coutentos*, 651 F.3d at 821 (considering whether the district court had properly excluded expert evidence under Rule 403, after affirming exclusion of the expert's evidence as irrelevant under Rule 702).[7]

---

[6] Of course, the relevance of Dr. Fitzgerald's opinions *might* change, if, at trial, the City opens the door to evidence concerning whether or not Scott had the required good faith, reasonable belief that Eckert sexually harassed her.

[7] Dr. Louise Fitzgerald is a nationally recognized psychologist with impeccable credentials in the area of sexual harassment. She has held may distinguished faculty positions at nationally prominent universities; has received an impressive number of important national awards from American Psychological Association; has received numerous grants, including a $1.6 million grant from the National Institutes of Mental Health to study various aspect of the harm caused by sexual harassment; and has authored a plethora of book chapters, co-authored two books, and dozens of journal articles related to the subject matte of her proposed testimony. She has also been invited to present at the leading universities in the United States, including Harvard, Yale, Michigan, Stanford, Duke, Northwestern, Ohio State and Carnegie Mellon. It is not her impressive qualifications that are at issue here, however. Rather, given this summary judgment ruling, which has narrowed the plaintiff's claims, Dr. Fitzgerald's proposed testimony, while highly relevant had there been a "sexual harassment" claim or a "retaliatory

Therefore, the City's Motion To Exclude Expert Testimony, seeking exclusion of Dr. Fitzgerald's testimony in its entirety, is granted.

### 4.    *Summary*

The City's Motion To Exclude Expert Testimony is granted as to all challenged opinions.

### III.    CONCLUSION

Upon the foregoing,

1.    The City's September 5, 2014, Motion For Summary Judgment (docket no. 46), joined in by defendant Eckert (docket no. 50), is **granted in part and denied in part**, as follows:

    a.    The Motion is **granted** as to Scott's retaliation claims to the extent that those claims seek relief for allegedly retaliatory incidents before April 7, 2012;

    b.    The Motion is also **granted** as to Scott's relation claims to the extent that those claims seek relief for the City reducing Scott's hours from 35 hours per week to 29 hours per week, ostensibly because of changes to the definition of "full-time employee" for health insurance purposes under the Affordable Care Act, on January 1, 2013; but

---

harassment" or "retaliatory hostile work environment" claim, is no longer relevant to the remaining retaliation claim.

Also, had Dr. Fitzgerald performed a clinical examination of Scott and opined on the effects of the alleged retaliation on her mental state, such as offering opinions that such retaliation had caused depression, stress, distress, or other mental or emotional symptoms, her opinions might also have been admissible to support Scott's prayer for damages for emotional distress. Dr. Fitzgerald's Report, filed at docket no. 48-3, does not indicate that she has any such opinions admissible for purposes of Scott's prayer for damages, however.

      c.     The Motion is **denied** to the extent that Scott seeks relief for the denial of the full-time position of Administrative Assistant in Public Works-Engineering in 2012 in retaliation for complaints of sexual harassment by Eckert during a 2004 investigation of such allegations against Eckert.

    2.     The City's September 5, 2014, Motion To Exclude And/Or Limit The Testimony Of Plaintiff's Expert Witnesses (Motion To Exclude Testimony Of Experts) (docket no. 48), joined in by Eckert (docket no. 51), is **granted** as to all challenged opinions.

     **IT IS SO ORDERED**.

     **DATED** this 22nd day of December, 2014.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA