**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

BRITTANY SCOTT,

                Plaintiff,

vs.

CITY OF SIOUX CITY, IOWA, and
PAUL ECKERT, Individually,

             Defendants.

No. C 13-4064-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING UNSEALING
OF THE COURT'S EVIDENTIARY
RULING**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION**..................................................................... 2
    *A.*    *Procedural Background* ................................................ 2
    *B.*    *Arguments Of The Parties* ........................................... 3

II.   **LEGAL ANALYSIS** ...................................................... 3
    *A.*    *Applicable Standards*.................................................... 3
        *1.*    *General principles* ............................................ 4
        *2.*    *Balancing tests and pertinent factors*................ 6
            *a.*    *The Eighth Circuit test*............................ 6
            *b.*    *Other courts' tests*................................... 9
            *c.*    *The applicable test* ............................... 14
    *B.*    *Application Of The Standards*................................... 15
        *1.*    *The step one inquiry* ...................................... 15
        *2.*    *The step two inquiry* ...................................... 17
        *3.*    *Consideration of less drastic measures*............. 20

III.  **CONCLUSION** ............................................................... 21

## I.    INTRODUCTION

### A.    *Procedural Background*

On March 17, 2015, in anticipation of trial, I entered a sealed Memorandum Opinion And Order Regarding The Parties' Pre-Trial Evidentiary Motions (Evidentiary Ruling) (docket no. 93). At the conclusion of that Evidentiary Ruling, I stated,

> IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about challenged evidence and to avoid disclosure of private information subject to a protective order, this ruling shall remain sealed, unless the court, on the motion of a party, directs that it be unsealed.

Evidentiary Ruling, 37.

On March 25, 2015, the parties advised me that this case had settled. Shortly thereafter, I reconsidered my decision to keep the Evidentiary Ruling sealed, so I notified the parties by e-mail that, if they wanted to try to convince me that the Evidentiary Ruling should remain sealed, they should notify me by e-mail by noon on March 27, 2015. By e-mail dated March 26, 2015, counsel for the City requested a short telephonic hearing to express the City's views on why the Evidentiary Ruling and documents pertaining to it should remain sealed. I agreed to set a telephonic hearing on the matter and requested a list of citations to pertinent cases, in lieu of briefing. By e-mail dated March 31, 2015, the City provided a list of five citations with parenthetical explanations of what the City believed the import of the cited cases to be. By Text Order (docket no. 103), filed April 2, 2015, I set a telephonic hearing for April 6, 2015, on the question of whether the Evidentiary Ruling should remain sealed.

### B.      Arguments Of The Parties

Prior to the telephonic hearing, I e-mailed the parties a copy of a draft of this ruling and a copy of a proposed redacted version of the Evidentiary Ruling. At the telephonic hearing, all parties agreed that filing of a redacted version of the Evidentiary Ruling was an acceptable solution to address their interests. The City proposed some additional redactions, which I adopted. I then e-mailed the parties a revised redacted version of the Evidentiary Ruling to confirm that no redactions had been overlooked. After reviewing the revised redacted version, the plaintiff belatedly requested that I also redact Section I.B. of the Evidentiary Ruling, so that it would not be apparent that she was the person who had the relationship that was the subject of her Motion In Limine.

After the hearing and consideration of pertinent authorities, I now enter this ruling regarding whether or not the Evidentiary Ruling should remain sealed.

### II.      LEGAL ANALYSIS
### A.      Applicable Standards

Unfortunately, most of the cases cited by the City do not squarely address the central question, here, of whether or not the Evidentiary Ruling, itself, as opposed to other documents pertinent to the parties' evidentiary motions, should remain sealed.[1] Nevertheless, some of the cases cited by the City are instructive.

---

[1] The authorities and descriptions of their relevance provided by the City are the following: *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306 (1978) (recognizing common-law right of access to judicial records but also recognizing such right is not absolute); *IDT Corp. v. eBay*, 709 F.3d 1220 (8th Cir. 2013) (discussing the common-law right of access to judicial records and noting "discovery motions and accompanying exhibits" are not "presumptively public"); *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) (explaining balancing test in applying common-law right of access to judicial records); *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 16

### 1. *General principles*

In one of the cases cited by the City, *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), the United States Supreme Court explained, "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents," but "[i]t is uncontested . . . that the right to inspect and copy judicial records is not absolute." 435 U.S. at 597-98 (footnotes omitted). The Court identified interests supporting access to judicial records as including "the citizen's desire to keep a watchful eye on the workings of public agencies" and "a newspaper publisher's intention to publish information concerning the operation of government." *Id.* at 598. On the other hand, the Court identified interests

---

(D.D.C. 2013) (denying motion to unseal motion in limine and order granting motion in limine in part because "the Court granted the motion in limine precisely because it sought to exclude irrelevant and prejudicial information from trial that would have unduly infringed the minor plaintiff's privacy interests, and unsealing the records now would undermine that ruling"); *Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC*, No. 3:10-cv-978-J-37JBT, 2011 WL 5357843 (M.D. Fla. Nov. 1, 2011) (declining to decide whether a motion in limine is more akin to a discovery motion, to which the common-law right of access does not apply, or a motion requiring judicial resolution on the merits, to which the common-law right of access does apply).

As mentioned in the body of this decision, most of these cases do not squarely address the central question, here, of whether or not the Evidentiary Ruling, itself, as opposed to other documents pertinent to the parties' evidentiary motions, should remain sealed. *See Nixon*, 435 U.S. at 597 (describing the issue as "the applicability of the common-law right [of access to judicial documents] to exhibits subpoenaed from third parties"); *IDT Corp.*, 709 F.3d at 1221 (considering whether the district court abused its discretion in sealing the entire complaint or "sensitive business information included in the complaint"); *Amodeo*, 71 F.3d at 1047 (considering an appeal of an order releasing a redacted version of a sealed investigative report filed with the district court); *Mobile Shelter Sys.*, 2011 WL 5357843 at *1 (considering the plaintiff's motion to seal the plaintiff's expert report and exhibits to that report).

that might warrant keeping judicial records sealed as a court's duty to prevent court files from "becom[ing] a vehicle for improper purposes," because courts have the power "to insure that its records are not 'used to gratify private spite or promote public scandal' through the publication of 'the painful and sometimes disgusting details of a divorce case. *Id*. at 598 (quoting *In re Caswell*, 18 R.I. 835, 836, 29 A. 259 (1893)). Similarly, the Court found that "courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, or as sources of business information that might harm a litigant's competitive standing." *Id*. (citations omitted).[2]

      With only such anecdotal examples, the Court observed, "[i]t is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate." *Id*. at 598-99. What the Court did make clear, however, is that, "normally," a court "would be faced with the task of weighing the interests advanced by the parties in light of the public interest and the duty of the courts." *Id*. at 602. The Court concluded that it "need not decide how the balance would be struck if the case [before it] were resolved only on the basis of the facts and arguments" presented by the parties, however, because a "unique element" that had been overlooked by the parties and the courts below was the Presidential Recording Act. *See id*. at 603. The Court ultimately concluded that the Presidential Recording Act was a "decisive element" in that case. *Id*. at 607. Of course, that element is not present in this case.

---

[2] In an insightful discussion of the interplay between the sealing of judicial documents, judicial transparency, and judicial independence, Senior United States District Judge T.S. Ellis, III, argues, "By taking care—and taking steps—to ensure that sealing is (1) minimized and (2) justified or explained on the public record, judges will help ensure their independence qua judges." T.S. Ellis, III, *Sealing, Judicial Transparency and Judicial Independence*, 53 VILL. L. REV. 939, 940 (2008).

The Supreme Court's decision in *Nixon* stated the principles on which the Eighth Circuit Court of Appeals based its subsequent decision in *IDT Corp. v. eBay*, 709 F.3d 1220 (8th Cir. 2013). Specifically, in *IDT Corporation*, the Eighth Circuit Court of Appeals cited *Nixon* for the proposition that "[t]here is a common-law right of access to judicial records," but that "'the right to inspect and copy judicial records is not absolute.'" 709 F.3d at 1222 (quoting *Nixon*, 435 U.S. at 597-98). The court then elaborated,

> This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 (3d Cir.1993), and "to keep a watchful eye on the workings of public agencies." *Nixon*, 435 U.S. at 598, 98 S.Ct. 1306. It also provides a measure of accountability to the public at large, which pays for the courts. *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir.1999).

*IDT Corp.*, 709 F.3d at 1222.

## 2. Balancing tests and pertinent factors
### a. The Eighth Circuit test

In *IDT Corporation*, the court held "that the common-law right of access applies to judicial records in civil proceedings"—such as the one then before that court and the one now before me—as well as to criminal proceedings. *Id*. The court held, next, that the party opposing public access to an antitrust complaint in that case had waived any claim that the complaint was not a "judicial record" to which a common-law right of access attaches. *Id*. at 1222-23. Consequently, the disputed question before the court was "whether there were sufficient grounds to override the common-law right of access and to justify the district court's order sealing the entire antitrust complaint." *Id*. at 1223. Thus, *IDT Corporation* formalizes the balancing of interests described in *Nixon* into a

"test," in which the court must first decide if the document in question is a "judicial record," and if it is, consider whether the party seeking to prevent disclosure has overcome the common-law right of access that would otherwise apply to "judicial records."

To guide consideration of the second question, the court focused on the nature and weight of the interests on each side of the disclosure issue, as follows:

> Where the common-law right of access is implicated, the court must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed. *See* [*Nixon*, 435 U.S. at 598]. The Second Circuit usefully observed that judicial records and documents generally will "fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir.1995). "[T]he decision as to access is one best left to the sound discretion of the trial court ... in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599, 98 S.Ct. 1306; *see also United States v. McDougal*, 103 F.3d 651, 657–58 (8th Cir.1996); *United States v. Webbe*, 791 F.2d 103, 106 (8th Cir.1986).

*IDT Corp.*, 709 F.3d at 1223.

In answering the second question, the court in *IDT Corporation* found that a generalized public interest in "an open court system" was a "minimal" interest, with regard to the antitrust complaint at issue. *Id*. at 1224. Instead, the court observed, "Modern cases on the common-law right of access say that 'the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring

the federal courts.'" *Id.* (quoting *Amodeo*, 71 F.3d at 1049, and citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006), and *In re Boston Herald, Inc.*, 321 F.3d 174, 198 (1st Cir. 2003)). The court found that the antitrust complaint at issue in the case before it "'play[ed] only a negligible role in the performance of Article III duties,'" *id.* at 1224 (quoting *Amodeo*, 71 F.3d at 1050), so that the weight of the "presumption of access" was "'low and amounts to little more than a prediction of public access absent a countervailing reason.'" *Id.* (quoting *Amodeo*, 71 F.3d at 1050). Given this low interest in public access, the court "conclud[ed] that the district court did not abuse its discretion in determining that the potential harm in unsealing 'confidential and competitively sensitive information' outweigh[ed] [the moving party's] 'generalized interest in access to the complaint.'" *Id.* (quoting the decision below).

On the other hand, the appellate court was "unclear . . . why the [district] court concluded that the *entire* document should remain under seal." *Id.* (emphasis in the original). As the court explained,

> While the district court was justified in sealing information derived from materials produced under the protective orders, portions of the complaint may be amenable to public access without jeopardizing the confidentiality of sensitive information exchanged in the patent infringement litigation. *See Amodeo*, 44 F.3d at 147 (concluding that "it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document"). On the other hand, confidential information may be so embedded in a pleading that line-by-line redaction is impossible, *see In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir.1988), or redaction might be insufficient to protect the interests that justify sealing, *see Goff v. Graves*, 362 F.3d 543, 550 (8th Cir.2004). On the present record, there is not a sufficient explanation from the district

court for us to evaluate whether redaction was a reasonable alternative to sealing the entire complaint.

*IDT Corp.*, 709 F.3d at 1224. The court remanded for the district court to assess whether redaction of confidential business information was "practicable," then either to "unseal a redacted complaint or deny the motion to unseal with an explanation why the entire complaint should remain under seal." *Id*. at 1225.

Thus, in addition to formalizing a balancing "test" in this Circuit, and identifying the nature and weight of pertinent interests that must be balanced, the decision in *IDT Corporation* teaches that a district court must consider whether less drastic measures than sealing an *entire* document will best serve the competing interests presented by the document in question.

> ### b.    *Other courts' tests*

Although not controlling, decisions that are nevertheless more directly on point as to whether or not a judicial *ruling* should be sealed also balance public and private interests, even if they do not describe that process as a balancing "test." For example, one district court recently considered a motion to seal an order compelling the production of documents that the moving party believed would expose to the public "sensitive information"—specifically, information that the moving party believed was protected by attorney-client or work-product privileges. *United States ex rel. Barko v. Halliburton Co.*, 4 F. Supp. 3d 162, 170 (D.D.C. 2014). The court began by observing,

> This Court operates as a public forum "that best serve[s] the public when [it] do[es] [its] business openly and in full view." Although the Court may seal documents, it must do so in light of certain factors, including "the strength of the property and privacy interests involved." A "strong presumption in favor of public access to judicial proceedings" exists.

*Barko*, 4 F. Supp. 3d at 170 (footnote citations omitted).  The court found that the moving party "ha[d] not shown any privacy interest that should close the public's right to open courts."  *Id*.  This was so, the court concluded, for two reasons.  First, the court concluded that there were no requests for legal advice or communications of legal advice in the materials, merely the results of a factual investigation made for the moving party's records, so that no attorney-client or work-product privilege was actually at issue.  Second, the court concluded that the investigation had taken place seven years earlier, so that there were no "continuing business relationships" that could be harmed by the disclosures.  *Id*. at 171.  The court found that "secrecy for secrecy's sake" and the moving party's "embarrassment" over the wrongdoing revealed by the investigations were not sufficient to warrant keeping the ruling sealed. *Id*.

Approximately eight months earlier, the same court (but a different district judge) had addressed whether various orders should be unsealed in *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2 (D.D.C. 2013), a decision cited by the City here.  In *In re Fort Totten Metrorail Cases*, the court applied a formalized "two-step inquiry" established by District of Columbia Circuit precedent.  960 F. Supp. 2d at 6.  The first inquiry was whether the document at issue was a "judicial record" falling within the presumption of disclosure pursuant to the common-law right of access.  *Id*.  If the document was a "judicial record," then the second inquiry required a "balancing of the public's right of access against the interests favoring nondisclosure."  *Id*.  This two-step inquiry is essentially the same as the two-step inquiry under Eighth Circuit law, described above. *See IDT Corp.*, 709 F.3d at 1222-23.

As to the second inquiry, the court in *In re Fort Totten Metrorail Cases* determined the weight of the interests favoring nondisclosure based on consideration of six "*Hubbard* factors" used by courts in the District of Columbia Circuit, drawn from *United States v.*

*Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). *Id.* Those "*Hubbard* factors" were the following:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 6 (quoting *EEOC v. National Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996), in turn citing *Hubbard*, 650 F.2d at 317–22).

Using this two-step inquiry, the court in *In re Fort Totten Metrorail Cases* concluded, first, that orders approving settlements as fair and reasonable and dismissing cases were "judicial records," because of the "roles they played in the adjudicatory process." *Id.* at 7 (internal quotation marks and citations omitted). At the second step of the inquiry, as to those same orders, the court summarized its consideration of the "*Hubbard* factors" as follows:

> To sum up, the first and sixth *Hubbard* factors weigh heavily in favor of disclosure; the second, third, and fourth factors weigh in favor of nondisclosure; and the fifth factor is neutral. Although most of the factors weigh in favor of nondisclosure, this is not determinative because a strong showing on one *Hubbard* factor can outweigh several other factors. *See In re Sealed Case*, 237 F.3d 657, 666 (D.C.Cir.2001) (indicating that "an extraordinarily strong privacy interest" could, by itself, outweigh the remaining five *Hubbard* factors). Here, given the strength of the public's interest in accessing the minor settlement documents, and considering that disclosure of the documents would vindicate the purposes for which they were introduced during the

> judicial proceedings, the weight of the first and sixth *Hubbard*
> factors overcome the remaining factors. Accordingly, the
> strong presumption of access to the minor settlement
> documents has not been rebutted and the documents must be
> unsealed.

*In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 11. The court identified a few "caveats," however, because it agreed with the parties that the minors' medical information and the minors' full names and full birthdates should be redacted from the documents. *Id*.

In *In re Fort Totten Metrorail Cases*, the court performed the same two-step inquiry as to a request to disclose a motion in limine, concerning sensitive personal information of a minor plaintiff, and the order granting that motion. *Id*. at 16. As to these documents, which the court concluded were also "judicial records," the court found that "none of the *Hubbard* factors weigh in favor of their disclosure." *Id*. Indeed, the court noted that it had "granted the motion in limine precisely because it sought to exclude irrelevant and prejudicial information from trial that would have unduly infringed the minor plaintiff's privacy interests, and unsealing the records now would undermine that ruling." *Id*.

Additional cases addressing whether or not a court's decision should remain sealed apply more or less formal balancing tests, balancing the interests favoring and opposing disclosure of the decision. These cases are of interest, here, to the extent that they illuminate some additional factors to consider in that balancing. For example, in *Reynolds v. Astrue*, No. 2:09-cv-302-JMS, 2012 WL 4815576 (S.D. Ind. Oct. 10, 2012), the court denied the motion of an applicant for Social Security disability benefits to seal the court's opinion on his challenge to the administrative decision denying such benefits. The court explained, "While the Court understands [the applicant's] desire to keep certain personal information out of the public forum, he initiated the appeal challenging the administrative

decision to deny him Social Security benefits for his medical conditions and he ultimately prevailed." *Reynolds*, 2012 WL 4815576 at *2. Thus, in that court's view, a relevant factor in the analysis is who put at issue the matters that a party now seeks to protect from disclosure by sealing a judicial decision.

Another court concluded that the decision at issue should be disclosed, because it was "an extremely important part of th[e] case." *Sutterfield v. City of Milwakee*, 870 F. Supp. 2d 633, 645 (E.D. Wis. 2012). The court observed, further,

> [W]hile its particulars should, perhaps, remain out of public view to protect [the applicant's] privacy interests, it is nonetheless important for this Court's opinion and the items upon which it based that opinion (discovery materials and the parties' briefs) to be part of the public record, in order that the public understand the justification for the Court's ruling.

*Sutterfield*, 870 F. Supp. 2d at 645. Indeed, several other decisions make clear that the public interest in disclosure is particularly strong as to judicial decisions, so that the public understands the rationale of a court's ruling. *See Madigan v. Webber Hosp. Assoc.*, No. 2:11-cv-94-JAW, 2012 WL 666097, *1 (D. Maine Feb. 27, 2012) (also denying a motion to seal a decision and redactions that, *inter alia*, "would impede the public's understanding of the grounds for the Decision"); *Schedin v. Ortho-McNeil-Janssen Pharms., Inc.*, Civil No. 08-5743 (JRT), 2011 WL 1831597, *4 (D. Minn. May 12, 2011) (applying the "*Hubbard* factors," from District of Columbia district and circuit decisions to evidence admitted at trial, but finding "[t]he presumption for public access to court documents is 'especially strong' as it relates to judicial opinions," because judicial precedents are "presumptively correct," "valuable to the legal community as a whole," and "are not merely the property of private litigants," and none of the nominally confidential information discussed in the decision rose to the level of trade secrets, personal information of crime victims, or national security interests); *Carr v. Forbes,*

*Inc.*, 121 F. Supp. 2d 485, 496-97 (D.S.C. 2000) (noting that, where a judicial decision, rather than a motion and supporting documents, was at issue, the presumption for disclosure was particularly strong, and also noting that the movant for sealing had not previously attempted to seal any relevant documents or proceedings on which the decision was based); *Miller-Holzwarth, Inc. v. United States*, 44 Fed. Cl. 153, 154 (1999) ("Harm to reputation, however, does not constitute the type of 'compelling justification' that must be present to deny the public's access to judicial records," in that case, a judicial opinion imposing sanctions on counsel); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998) ("There is a particularly strong presumption of public access to [judicial] decisions as well as to the briefs and documents submitted in relation thereto. The Court's decisions are adjudications—direct exercises of judicial power the reasoning and substantive effect of which the public has an important interest in scrutinizing.").

### c.     *The applicable test*

I believe that, in determining whether or not to unseal my Evidentiary Ruling, I must be guided, first, by the balancing "test" articulated by the Eighth Circuit Court of Appeals, because it represents controlling law. Thus, I must make a two-step inquiry: (1) I must ask whether the Evidentiary Ruling is a "judicial record" to which a common-law right of access attaches, and if it is, (2) I must ask whether the party opposing public access to the Evidentiary Ruling, here, the City, has demonstrated that there are sufficient grounds to override the common-law right of access and to justify sealing the Evidentiary Ruling in its entirety. *IDT Corp.*, 709 F.3d at 1222-23.

As to this second inquiry, I "must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *Id.* at 1223. At this step of the

inquiry, I must recall that not all judicial decisions (or other "judicial records") implicate the interests served by the common-law right of access to the same degree. Rather, I must take into account the fact that judicial decisions, like "judicial records," "fall somewhere on a continuum" from decisions that *are* adjudications—in the sense that they are "the exercise of Article III judicial power" and, therefore, of value "to those monitoring the federal courts"—to decisions that merely consider the relevance of certain matters. *Cf. id.* (citing *Amodeo*, 71 F.3d at 1049).

Moreover, at this second step of the inquiry, I believe that I can and should consider the "*Hubbard* factors," *see National Children's Ctr., Inc.*, 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317-22), as I find them entirely consistent with consideration of the opposing interests identified by the Eighth Circuit Court of Appeals, *see IDT Corp.*, 709 F.3d at 1223, and, more specifically, helpful in determining the nature and weight of those interests. I believe that I also can and should consider other factors deemed relevant by courts squarely confronting the question of whether to unseal a judicial decision, as described above, as I find those factors equally consistent with consideration of the opposing interests identified by the Eighth Circuit Court of Appeals.

Ultimately, I must use my "sound discretion" to decide the unsealing issue "in light of the relevant facts and circumstances of th[is] particular case." *Id.* (internal quotation marks and citations omitted).

## B.        *Application Of The Standards*

### 1.        *The step one inquiry*

I do not believe that there is any question that my Evidentiary Ruling is a "judicial record" to which the common-law right of access applies. *IDT Corp.*, 709 F.3d at 1223. This is so, because the Evidentiary Ruling not only played a role in, but was a result of, the "adjudicatory process." *See In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 7

(finding that certain documents were "judicial records," because of the "roles they played in the adjudicatory process").

I must also assess where on the "continuum" of judicial decisions the Evidentiary Ruling falls to determine how strongly it implicates the interests served by the common-law right of access. *Cf. IDT Corp.*, 709 F.3d at 1223 (identifying such a "continuum" for "judicial records" (citing *Amodeo*, 71 F.3d at 1049). In the Evidentiary Ruling, I observed, "The majority of the parties' challenges to specific evidence are based on—or can be resolved on the basis of—the balance of the probative value of that evidence against its potential for unfair prejudice." Evidentiary Ruling at 9. That does not mean, however, that the Evidentiary Ruling falls nearer the end of the continuum that only weakly implicates the interests served by the common-law right of access, as a decision that merely considered the relevance or irrelevance of certain matters. *Cf. IDT Corp.*, 709 F.3d at 1223. Rather, the Evidentiary Ruling also addressed the scope of the plaintiff's claims and the scope of the issues that she would be able to assert, *see* Evidentiary Ruling at 4-6, as well as the extent to which evidence that was purportedly intertwined with or relevant to her claims or a defendant's defenses was nevertheless too prejudicial to be admitted at trial, *see id., passim*. Thus, the Evidentiary Ruling was an "adjudication" in the sense that it was "the exercise of Article III judicial power" and, therefore, of value "to those monitoring the federal courts," relatively strongly implicating the interests served by the common-law right of access. *Cf. IDT Corp.*, 709 F.3d at 1223.

This determination that the interests favoring disclosure of the Evidentiary Ruling are strong is consistent with the observation of other courts that "[t]his Court operates as a public forum 'that best serve[s] the public when [it] do[es] [its] business openly and in full view," *see Barko*, 4 F. Supp. 3d at 170 (footnote citations omitted), the Evidentiary Ruling was "an extremely important part of th[e] case," *see Sutterfield*, 870 F. Supp. 2d

at 643, and its disclosure would assist public understanding of the grounds for the court's ruling, public scrutiny of the workings of a public agency, and have some value as precedent. *See, e.g., Nixon*, 435 U.S. at 597-98; *IDT Corp.*, 709 F.3d at 1222; *Madigan*, 2012 WL 666097 at *1; *Schedin*, 2011 WL 1831597 at *4; *Encyclopedia Brown Prods., Ltd.*, 26 F. Supp. 2d at 612.

Because the Evidentiary Ruling is plainly a "judicial record" that implicates the right of public access, I must proceed to the second step of the inquiry. *See IDT Corp.*, 709 F.3d at 1223.

### 2.    *The step two inquiry*

At the second step of the inquiry, I "must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *IDT Corp.*, 709 F.3d at 1223 (citing *Nixon*, 435 U.S. at 598). As I explained, above, that inquiry is informed by consideration of the "*Hubbard* factors" and other factors specifically pertinent to the question of whether a judicial decision should be unsealed.

As to the first of the "*Hubbard* factors," I find that there is a significant "need for public access to the [Evidentiary Ruling] at issue." *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 6 (quoting *National Children's Ctr., Inc.*, 98 F.3d at 1409, in turn citing *Hubbard*, 650 F.2d at 317–22). This is so, for the reasons stated in the preceding subsection for finding that the Evidentiary Ruling was at the end of the "continuum" strongly implicating the interests advanced by the common-law right of public access. *See, e.g., Nixon*, 435 U.S. at 598 (explaining that interests supporting access to judicial records include "the citizen's desire to keep a watchful eye on the workings of public agencies" and "a newspaper publisher's intention to publish information concerning the operation of government").

As to the second and third "*Hubbard* factors," it is true that neither the Evidentiary Ruling nor the underlying motions and documents were previously accessible by the public, because they were filed under seal, and that the City has objected to the disclosure in order to protect the privacy interests of City officials and employees and others mentioned in the Evidentiary Ruling. *See id.*; *and compare Carr*, 121 F. Supp. 2d at 496-97 (noting that the movant for sealing had not previously attempted to seal any relevant documents or proceedings on which the decision was based). It also cannot be said that the City is responsible for putting at issue or injecting most of the disputed evidence at issue in the Evidentiary Ruling, as the City was attempting to *block* the use of such evidence at trial. *Compare Reynolds*, 2012 WL 4815576 at *2 ("While the Court understands [the applicant's] desire to keep certain personal information out of the public forum, he initiated the appeal challenging the administrative decision to deny him Social Security benefits for his medical conditions and he ultimately prevailed."). Nevertheless, many of the "confidential" or "private" matters addressed in the Evidentiary Ruling have been previously disclosed in this case, either in the plaintiff's Complaint or in my December 12, 2014, Memorandum Opinion And Order Regarding The Defendant City's Motion For Summary Judgment And Motion To Exclude Testimony By Plaintiff's Experts, Both Joined By The Individual Defendant (docket no. 66), neither of which was sealed.

As to the fourth "*Hubbard* factor," the privacy interests asserted as a ground for keeping the Evidentiary Ruling sealed are not trivial, *see id.*, because the court should be leery of allowing its opinions to "promote public scandal" or to disclose "the painful and sometimes disgusting details" of sexual misconduct, *see Nixon*, 435 U.S. at 598. I also recognize that, in *In re Fort Totten Metrorail Cases*, the court kept a ruling on a motion in limine sealed, because unsealing the ruling would undermine the court's decision to exclude evidence that was irrelevant and prejudicial and that would have

unduly infringed the minor plaintiff's privacy interests. 960 F. Supp. 2d at 16. Here, however, the persons about whom "private" information might be disclosed are *not* minors. Moreover, they are public employees and public officials, who might reasonably expect a higher degree of public scrutiny, even of their "private" doings. *See, e.g., Nixon*, 435 U.S. at 598 (explaining that public scrutiny of the operation of government was an interest justifying disclosure of judicial records). Here, neither "secrecy for secrecy's sake" nor a public person's "embarrassment" over sexual misconduct while conducting the business of the City is an interest sufficient to justify keeping the Evidentiary Ruling sealed. *Cf. Barko*, 4 F. Supp. 3d at 171; *accord Miller-Holzwarth, Inc.*, 44 Fed. Cl. at 154 ("Harm to reputation, however, does not constitute the type of 'compelling justification' that must be present to deny the public's access to judicial records," in that case, a judicial opinion imposing sanctions on counsel). Similarly, as to the fifth "*Hubbard* factor," which is the possibility of prejudice to those opposing disclosure, *see In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 6 (quoting *National Children's Ctr., Inc.*, 98 F.3d at 1409, in turn citing *Hubbard*, 650 F.2d at 317–22), the "prejudice" here really amounts to little more than "embarrassment." As to the last of the "*Hubbard* factors," the purpose for which the Evidentiary Ruling was made during the judicial proceedings, *see id.*, it is important to remember that the Evidentiary Ruling was made in a case involving claims of retaliation for complaining about or opposing sexual harassment. Such claims necessarily involve a good many "embarrassing" issues, including issues of sexual misconduct. The primary purpose of sealing the Evidentiary Ruling, at least before trial, was "to avoid exposure of potential jurors to information about challenged evidence," Evidentiary Ruling at 37, but that purpose has expired. While the primary purpose of continuing the sealing of the Evidentiary Ruling indefinitely after the case settled was "to avoid disclosure of private information subject to a protective order," *id.*, that interest must necessarily bow to weightier contrary interests.

In short, I conclude that, considering all of the circumstances and the pertinent factors, the significant degree to which sealing the Evidentiary Ruling would interfere with the interests served by the common-law right of access simply is not counterbalanced by any interference against the salutary interests served by maintaining confidentiality of the Evidentiary Ruling. *IDT Corp.*, 709 F.3d at 1223 (citing *Nixon*, 435 U.S. at 598). Rather, the balance of interests weighs heavily in favor of unsealing the Evidentiary Ruling.

### 3.      *Consideration of less drastic measures*

Although I have concluded that the balance of interests weighs heavily in favor of unsealing the Evidentiary Ruling, I believe that it is prudent—if it is not actually mandatory—that I consider whether less drastic measures than unsealing the Evidentiary Ruling in its entirety would adequately serve the competing interests. *Cf. IDT Corp.*, 709 F.3d at 1225 (remanding for consideration of whether redaction of confidential business information from the "judicial record," rather than simply sealing the "judicial record" in its entirety, was "practicable," then directing that the district court either unseal a redacted version of the "judicial document" or deny the motion to unseal with an explanation of why the entire "judicial document" should remain under seal). I conclude that this is not an instance in which confidential information is so embedded in the Evidentiary Ruling that line-by-line redaction is either impossible or insufficient to protect relevant privacy interests. *Id*. at 1224. Rather than unsealing the Evidentiary Ruling in an unredacted form, I will unseal only a redacted version, in which I will redact the names of City officials or employees and other persons, other than the plaintiff or a named defendant, who allegedly engaged in sexual misconduct or extramarital affairs or who are alleged to be victims of sexual harassment. The plaintiff's belated request that I also redact Section I.B. of the Evidentiary Ruling is denied.

### III.    CONCLUSION

Upon the foregoing, the **unredacted** version of the March 17, 2015, Memorandum Opinion And Order Regarding The Parties' Pre-Trial Evidentiary Motions (Evidentiary Ruling) (docket no. 93) shall remain sealed.   A **redacted** version of that Evidentiary Ruling, which shall be available for public access, is attached to this ruling.

**IT IS SO ORDERED**.

**DATED** this 6th day of April, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA