**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

BRITTANY SCOTT,

           Plaintiff,

vs.

CITY OF SIOUX CITY, IOWA, and
PAUL ECKERT, Individually,

          Defendants.

No. C 13-4064-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE
PARTIES' PRE-TRIAL
EVIDENTIARY MOTIONS**

***FILED UNDER SEAL***

———————————————

**TABLE OF CONTENTS**

I.     *INTRODUCTION*...............................................................................2

II.   *LEGAL ANALYSIS* ........................................................................4
     A.    *Standards Applicable To All Motions*...................................4
          1.   *Evidence relating to dismissed claims* .................................4
          2.   *Proof of the remaining claims* ...........................................6
          3.   *Relevance and prejudice standards for
                admissibility* ................................................................9
     B.    *Scott's Motion In Limine*........................................................11
     C.    *Eckert's Motion In Limine*......................................................14
          1.   *Evidence concerning* ██████████ ...........................14
          2.   *Hearsay testimony from Rhonda Capron* ...........................16
          3.   *Testimony of Julie Eckert* .............................................18
           4.   *Evidence of religious affiliations* ....................................20
          5.   *Summary* ...................................................................21
     D.    *The City's Motion In Limine* ...................................................21
          1.   *Evidence of actions I found were "not
                materially adverse"*......................................................21
          2.   *Eckert's harassing and retaliatory conduct
                towards others*.............................................................23
          3.   *Evidence of harassment of others by others*........................28

|  | 4. | *Rumors of affairs and sexual misconduct* ........................... | *29* |
|---|---|---|---|
|  | 5. | *Hearsay statements* ...................................................... | *31* |
|  | 6. | *Witnesses' opinions* ...................................................... | *32* |
|  | 7. | *Evidence regarding the sufficiency of City investigations, policies, or procedures* .............................. | *33* |
|  | 8. | *Evidence of other cases or claims against the City* ......................................................................... | *34* |
|  | 9. | *Miscellaneous categories of evidence* ............................... | *35* |
|  | 10. | *Summary* .................................................................... | *37* |
| *III.* | *CONCLUSION* | ........................................................................... | *37* |

## I.    INTRODUCTION

Plaintiff Brittany Scott, a long-time employee of the defendant City of Sioux City, Iowa, originally asserted claims, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216, that, over a period of almost nine years, she was retaliated against by the City and the former City Manager, defendant Paul Eckert, for her 2004 complaint that Eckert sexually harassed her from 2000 to 2004.  I set out the factual background to Scott's claims, in some detail, in my December 22, 2014, Memorandum Opinion And Order Regarding The Defendant City's Motion For Summary Judgment And Motion To Exclude Testimony By Plaintiff's Experts, Both Joined By The Individual Defendant (Summary Judgment Ruling) (docket no. 66), *published at Scott v. City of Sioux City, Iowa*, ___ F. Supp. 3d ___, 2014 WL 7274929 (N.D. Iowa Dec. 22, 2014).  I will not repeat that background here.

2

In my Summary Judgment Ruling, I granted the City's September 5, 2014, Motion For Summary Judgment (docket no. 46), in which defendant Eckert joined (docket no. 50), as to Scott's retaliation claims to the extent that those claims sought relief for allegedly retaliatory incidents before April 7, 2012. I also granted the motion as to Scott's retaliation claims to the extent that those claims sought relief for the City reducing Scott's hours from 35 hours per week to 29 hours per week, on January 1, 2013, ostensibly because of changes to the definition of "full-time employee" for health insurance purposes under the Affordable Care Act. On the other hand, I denied the motion to the extent that Scott seeks relief for the denial of the full-time position of Administrative Assistant in Public Works-Engineering for the City in 2012 in retaliation for complaints of sexual harassment by Eckert during a 2004 investigation of such allegations against Eckert. It is that claim—and only that claim—on which this case is scheduled to go to trial, beginning March 30, 2015.

In anticipation of trial, the parties filed three evidentiary motions. On February 17, 2015, Scott filed her Motion In Limine (docket no. 68), which she supplemented, on February 25, 2015, by filing her First Amendment To Motion In Limine (docket no. 75), which challenged the admissibility of an additional category of evidence. On February 26, 2015, the City filed a Response (docket no. 76) to Scott's motion, as supplemented, and, on February 27, 2015, Eckert filed a Joinder (docket no. 77) in the City's Response. Scott did not file any reply. On February 17, 2015, Eckert filed his Motion In Limine (docket no. 70). On March 3, 2015, Scott filed her Resistance (docket no. 78) to that motion, and, on March 4, 2015, Eckert filed a Statement (docket no. 79) that he would file no reply. On February 18, 2015, the City filed its Motion In Limine (docket no. 72), and, on February 18, 2015, Eckert filed his Joinder (docket no. 73) in that motion. On March 9, 2015, Scott filed her Resistance (docket no. 82), and, on March 10, 2015, the City filed its Reply (docket no. 83).

3

These motions are now ripe for my consideration.

## II.    LEGAL ANALYSIS

### A.    Standards Applicable To All Motions

Many of the same grounds for exclusion of evidence are asserted in all of the parties' evidentiary motions. To avoid needless repetition, I will begin with a brief summary of standards applicable to many, if not all, of the evidentiary challenges.

### 1.    Evidence relating to dismissed claims

One of the defendants' central contentions is that Scott is attempting to introduce evidence that is relevant only to dismissed claims. I find that the decision of the Eighth Circuit Court of Appeals in *Blair v. Wills*, 420 F.3d 823 (8th Cir. 2005), is instructive on the admissibility of evidence that relates to dismissed claims at the trial of remaining claims.

In *Blair*, the court considered whether the district court had improperly denied the defendants' motion for new trial, which had been based on the plaintiff's counsel's repeated introduction of evidence concerning alleged misconduct of the defendants that was irrelevant to the plaintiff's remaining claims. 420 F.3d at 830. The appellate court observed,

> Although the District Court repeatedly reminded Blair's counsel to focus on the claims remaining in the case—the FLSA and battery claims—and to refrain from injecting irrelevant and prejudicial evidence into the proceeding, these admonitions were unsuccessful. *Unfortunately, the ongoing introduction of irrelevant information, the repeated objections by Appellees, and the frequent warnings and admonitions by the District Court likely gave jurors the impression that something more happened than they were being told. When the case is a close one, the possibility that improper conduct could have influenced the jury's verdict is increased.*

4

> *Silbergleit [v. First Interstate Bank of Fargo]*, 37 F.3d [394,] 398 [(8th Cir.1994)]. The fact that the jury awarded Blair $20,000 on relatively weak evidence of battery supports our conclusion that Gerhardt was prejudiced by the misconduct of Blair's counsel.
>
> > The line of questions posed by Blair's counsel over the course of the two-and-a-half-day trial emphasized irrelevant information having no bearing on the issues remaining in the case and demonstrated a persistent effort by Blair's counsel to get this information before the jury, despite repeated admonitions by the District Court. Although the District Court made a valiant attempt to rein in Blair's attorney, the improper and prejudicial questioning continued. We believe that the combined effect of these questions was to present to the jury an abundance of irrelevant evidence that had no bearing on the merits of the remaining claims and served only to prejudice the jury against Gerhardt. Consequently, we conclude that the District Court abused its discretion by denying Gerhardt's motion for a new trial on Blair's battery claim.

*Blair*, 420 F.3d at 830 (emphasis added).

The decision in *Blair* suggests that a trial court must be vigilant to exclude evidence that relates to dismissed claims or misconduct of a party that is irrelevant or that is only marginally relevant to remaining claims, because of the prejudicial effect of such evidence. *See also Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist.*, 103 F.3d 1422, 1432-33 (8th Cir. 1997) (holding that evidence that was relevant only to a voluntarily withdrawn breach-of-contract claim should not have been admitted to determine damages owed under a termination clause, and noting that the error in admitting such evidence "caused, or contributed to, a prejudicial conclusion" by the jury); *Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.*, 73 F. Supp. 2d 997, 10002-03 (N.D. Iowa 1999) (concluding that evidence that was only marginally relevant

5

to remaining claims should be excluded pursuant to Rule 403, on the ground that it could confuse the issues for the jury. I will exclude evidence that is offered only to support claims or issues that I have determined as a matter of law at summary judgment or that is only marginally relevant to remaining claims.

### 2.    *Proof of the remaining claims*

All of the evidentiary challenges are in the context of a trial of Scott's remaining federal and state claims, which seek relief for the alleged denial of a full-time position of Administrative Assistant in Public Works-Engineering for the City in 2012 in retaliation for complaints of sexual harassment by Eckert during a 2004 investigation of such allegations against Eckert. Thus, it will be instructive to reiterate the elements that Scott must prove to win on her claims.

The Eighth Circuit Court of Appeals and the Iowa Supreme Court have repeatedly recognized that retaliation claims under Title VII and the ICRA are interpreted the same way. *See, e.g., EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 693 (8th Cir. 2012) ("'Consistent with our precedent, the district court concluded that the [ICRA] is interpreted in the same way as Title VII.'" (quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 416 n.2 (8th Cir. 2010))); *Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 750 (Iowa 2006) (identifying the same elements for a retaliation claim under Title VII and the ICRA); *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005) (observing, in a case involving retaliation claims under state and federal law, "Because the ICRA is in part modeled after Title VII, we have traditionally looked to federal law for guidance in interpreting it."). Thus, here, I will only summarize the federal law applicable to Scott's claims.

The Eighth Circuit Court of Appeals has explained,

> To establish a retaliation claim under Title VII, an employee must show: (1) she engaged in protected conduct; (2) a reasonable employee would have found the retaliatory

6

> action materially adverse; and (3) the materially adverse
> action was causally linked to the protected conduct. *Pye v. Nu*
> *Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir.2011).

*Musoff v. J.C. Penny Co., Inc.*, 773 F.3d 916, 918 (8th Cir. 2014). As to the first element, a plaintiff must show, *inter alia*, that she had a good faith, reasonable belief that the underlying conduct that she complained about violated Title VII. *See Brannum v. Missouri Dep't of Corr.*, 518 F.3d 542, 547–49 (8th Cir. 2008). In this case, however, while it appears that the defendants dispute whether Scott actually reported the alleged sexual harassment by Eckert, they have represented, both at summary judgment and in their evidentiary motions, that they have not and will not challenge the good faith or reasonableness of Scott's belief that Eckert sexually harassed her. As I stated in my Summary Judgment Ruling, under these circumstances, I agree with the City that whether or not Scott had such a good faith, reasonable belief that the conduct she was complaining about was sexual harassment should not even be submitted to the jury. *See* Summary Judgment Ruling at 30-31, *published at Scott*, ___ F. Supp. 3d at ___, 2014 WL 7274929 at *16.

As to the second element, "a retaliatory action is materially adverse if it would likely dissuade a reasonable worker from engaging in protected conduct." *Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 767 F.3d 744, 749 (8th Cir. 2014) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68-69 (2006)). As to the third element, Scott must prove that her 2004 complaint about Eckert's sexual harassment was the "but-for cause" of the City's failure to promote her to the Administrative Assistant position in 2012. *See University of Texas Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, ___, 133 S.Ct. 2517, 2534 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). This means that Scott must prove that her protected

7

conduct was "'a determinative—not merely motivating—factor' in [the City's] actions." *Robinson v. American Red Cross*, 753 F.3d 749, 756 (8th Cir. 2014) (quoting *Tyler v. University of Arkansas Bd. of Trs.*, 628 F.3d 980, 985 (8th Cir. 2011)).

One of the obvious difficulties with proof of Scott's retaliation claim is that, "[w]ith such a lengthy delay [between allegedly protected conduct and allegedly retaliatory action], 'any causal nexus inference tends to evaporate.'" *Jain v. CVS Pharm., Inc.*, ___ F.3d ___, 2015 WL 898068, *4 (8th Cir. Mar. 4, 2015) (quoting *Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005)) (describing "almost one year" as a "lengthy delay" between the protected conduct and the allegedly retaliatory action); *Musolf*, 773 F.3d at 919 ("The time-lag [of seven months] between [the plaintiff's] complaints and [adverse action] creates a challenge for [the plaintiff] to establish the causal link."). As I also noted in my Summary Judgment Ruling, however, untimely discriminatory acts may constitute relevant "background evidence in support of a timely claim." *Saulsberry v. St. Mary's Univ. of Minnesota*, 318 F.3d 862, 866 (8th Cir. 2003) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Thus, although the untimely discriminatory acts that Scott originally argued were "retaliatory" are not actionable, because they were untimely, they are evidence that helps to bridge the causation "gap" between a complaint of sexual harassment in 2004 and an allegedly retaliatory action in 2012. *See also Robinson*, 753 F.3d at 756 ("The more time that elapses between the two events, however, the weaker the inference of causation. Any inference of causation evaporates if the adverse action occurs months after the protected activity. In such cases a plaintiff must present additional evidence of a causal link, which can include escalating adverse and retaliatory action." (internal quotation marks and citations omitted)).

### *3.* *Relevance and prejudice standards for admissibility*

The majority of the parties' challenges to specific evidence are based on—or can be resolved on the basis of—the balance of the probative value of that evidence against its potential for unfair prejudice. Consequently, I will summarize, here, relevance and prejudice standards for admissibility.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not. Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FED. R. EVID. 403. The Eighth Circuit Court of Appeals "give[s] great deference to the district court's Rule 403 determinations." *United States v. Battle*, 774 F.3d 504, 514 (8th Cir. 2014); *United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) ("We review the district court's decision not to exclude evidence under Rule 403 for an abuse of discretion."); *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007) ("Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion." (citing *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175 (2006))).

More specifically, as to Rule 403, the Eighth Circuit Court of Appeals has explained,

9

> [U]nder Rule 403, the [challenged evidence's] probative value
> must be *substantially* outweighed by *unfair* prejudice.
> "Evidence is not unfairly prejudicial because it tends to prove
> guilt, but because it tends to encourage the jury to find guilt
> from improper reasoning. Whether there was unfair prejudice
> depends on whether there was an undue tendency to suggest
> decision on an improper basis." *United States v. Farrington*,
> 499 F.3d 854, 859 (8th Cir. 2007) (quotations omitted).

*Muhlenbruch*, 634 F.3d at 1001 (emphasis in the original); *Myers*, 503 F.3d at 681 ("Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30 (1983)). The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Bell*, 761 F.3d 900, 912 (8th Cir. 2014) (same). Unfairly prejudicial evidence, inviting a decision on an improper basis, includes evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)); *accord United States v. Young*, 753 F.3d 757, 768-69 (8th Cir. 2014) ("[T]he district court violated Federal Rule of Evidence 403 because the testimony was so inflammatory that its resulting unfair prejudice outweighed its probative value.").

When evidence may otherwise be inadmissible pursuant to Rule 403, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of that evidence may mitigate potential prejudice from such evidence and allow it to be admitted. *See, e.g, Valadez v. Watkins Motor Lines, Inc.*, 758 F.3d 975, 982 (8th Cir. 2014) ("To the extent [the parties] were concerned about

10

improper prejudice, a limiting instruction would have addressed those concerns." (citing FED. R. EVID. 105)); *United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d 757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose). The court has also recognized that limiting the amount of evidence, while excluding evidence that might prejudicially divert the jury's attention from the issues in the case, also mitigates any potential for unfair prejudice. *See United States v. Lemon*, 239 F.3d 968, 972 (8th Cir. 2001) (holding that, where the district court admitted a limited amount of gang-related evidence that was relevant to the defendant's "mere presence" defense, but excluded evidence of his drive-by shooting conviction, which might have prejudicially diverted the jury's attention from the constructive possession issues central to the case, the district court had not abused its discretion in admitting the limited gang-related evidence).

I turn, next, to consideration of Scott's Motion In Limine, with the standards summarized above in mind.

## B.    *Scott's Motion In Limine*

In her original Motion In Limine, Scott seeks exclusion of two categories of evidence:  (1) evidence of her prior consensual relationship with another City employee, XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXX; and (2) Eckert's family circumstances, specifically, that Eckert has

a child with a history of serious illness (cancer). In her subsequent First Amendment To Motion In Limine, Scott also seeks exclusion of evidence that Matthew Hoffman, who is the father of her two children, has recently been arrested on state charges involving controlled substances, unauthorized possession of offensive weapons, and possession of an incendiary or explosive device. In its Response, in which Eckert joined, the City agrees that evidence of Eckert's child's history of serious illness and Mr. Hoffman's recent arrest and charges should be excluded at trial, but the City does resist exclusion of evidence of Scott's relationship with ██████████. Thus, I will address only the admissibility of the disputed category of evidence.

Scott argues that, in a sexual harassment case, evidence of a plaintiff's prior sexual conduct is inadmissible pursuant to Rule 412 of the Federal Rules of Evidence, and that the same should be true in a case alleging retaliation for complaining about sexual harassment. She argues that she has simply not made the issue of whether or not she engaged in a relationship with any other City employee relevant in this case. She also argues that the potential for prejudice of such evidence outweighs its probative value. She contends that, although the relationship with ███████████ occurred during the timeframe of the alleged retaliation by Eckert and the City, it was long after she was subjected to any sexual harassment by Eckert, so that it bears no relationship to any disputed issues in the case. In response, the City argues that the evidence of a relationship between Scott and ████████ would be highly probative to show █████████'s bias, which is not precluded by Rule 412. The City agrees that, if ████████ does not testify at trial in Scott's case-in-chief, then evidence of his relationship with Scott is not admissible. If ██████████ does testify, however, the City argues that it should be allowed to impeach him with his relationship with Scott, because that relationship might tend to slant his memory or his testimony in her favor.

Rule 412 of the Federal Rules of Evidence does place limits on the admissibility, in both civil and criminal cases, of evidence "involving alleged sexual misconduct" of the alleged victim of harassment or sexual offenses. *See* FED. R. EVID. 412(a). It also provides, as an enumerated exception, that, in a civil case, such evidence may be admitted "if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party" or "if the victim has placed [the victim's reputation] in controversy." *See* FED. R. EVID. 412(b)(2). What I find is important here, however, is that the Eighth Circuit Court of Appeals has recognized that, if evidence is inadmissible under Rule 403, on the basis of the balance of probative value against potential prejudice, then a court need not reach its admissibility under Rule 412. *See United States v. Seibel*, 712 F.3d 1229, 1235 (8th Cir. 2013). I find that I can resolve this evidentiary dispute on the basis of a Rule 403 balancing of probative value against potential prejudice.

Specifically, I find that evidence of a consensual sexual relationship between Scott and ███████████ is substantially more prejudicial than probative. *See* FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001. As to potential prejudice, such evidence is likely to misdirect the jurors, enflame their passions in response to behavior of Scott that has little relevance to her claims, and cause jurors to decide the case on the basis of their emotional response to Scott's conduct with ███████████, rather than on the basis of the evidence concerning the alleged misconduct by Eckert and the City. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900. Even characterizing the relationship between Scott and ███████████ as "romantic" would simply invite jurors to assume or speculate that the relationship was sexual. On the other side of the scales, in my view, evidence that Scott allegedly had a sexual affair with ███████████ has little or no more probative value, for purposes of impeachment or demonstration of ███████████'s possible bias—the purpose for which the City contends that the evidence is admissible, citing *Saffa v. Oklahoma*

13

*Oncology, Inc.*, 405 F. Supp. 2d 1280, 1285-86 (N.D. Okla. 2005)—than evidence that Scott and ███████████ had a close personal friendship.

Consequently, the disputed part of Scott's Motion In Limine is granted, to the extent that, if ███████████ testifies, the defendants will not be allowed to attempt to impeach him or to challenge him for bias with evidence or inquiry into any alleged sexual relationship between him and Scott. However, if ███████████ testifies, the defendants will be allowed to ask whether or not he had "a close personal friendship with Scott" and whether or not that relationship has any effect on his testimony.

In light of the defendants' responses, the undisputed parts of Scott's Motion In Limine—seeking exclusion of evidence of Eckert's family circumstances and evidence that Matthew Hoffman has recently been arrested on state charges—are granted.

### C. Eckert's Motion In Limine

In his Motion In Limine, Eckert seeks to exclude four categories of evidence. First, he seeks to exclude evidence and comment relating to ███████████. Second, he seeks to exclude testimony from Rhonda Capron regarding hearsay statements by Scott and others. Third, he seeks to exclude testimony of Julie Eckert. Fourth, he seeks to exclude evidence of the religious affiliation of current and former City employees, council members, and their families. Scott contends that none of the disputed evidence should be excluded. Consequently, I will consider, in turn, all four of the categories of evidence that Eckert challenges.

#### 1. Evidence concerning ███████████

Eckert explains that ███████████████████████████ testified in deposition that one day, more than fifteen years ago, when she was exiting her car, the wind blew up her dress while Eckert was standing behind her and that the two later joked about that incident in front of one or more City employees. Eckert also explains that,

14

prior to ██████████ having back surgery, he gave her a teddy bear and candy. Finally, Eckert explains that Scott has testified that she believes that ██████████ is sexually attracted to her.

Eckert argues that none of this evidence is admissible, because none of it is relevant to any remaining issue in this case or probative of any claim or defense. Rather, Eckert argues, such evidence is only intended to embarrass ██████████, to prejudice and confuse the jury, and to waste time. Scott argues that such evidence is admissible, however. She argues that, on the occasion when ██████████'s dress blew up, ████ ██████████ was not wearing underwear, and that ██████████ and Eckert not only flaunted their mutual titillation over the incident in front of another City employee, but that ██████████ then threatened that City employee with discipline for her "insubordination" in objecting to their comments. Scott contends that such evidence is admissible to show that ██████████ was promoted to ██████████, without giving Scott a chance to apply for the position, for which Scott was better qualified, in part, because ██████████ voluntarily engaged in Eckert's prurient sexual voyeurism; to show that Eckert favored female employees who went along with his advances and sexual "play"; to show the "tone" and "culture" of Eckert's administration of the City; to show the "lore" among City employees about Eckert's conduct; and to impeach Eckert's contention that his relationship with female employees was "professional." Scott also contends that such evidence may have influenced the decisions of others regarding City employees that Eckert did not favor and that such evidence reasonably influenced her own decisions about reporting retaliatory incidents against her. Scott contends that evidence of, or her belief that, ██████████ is sexually attracted to her is admissible, because an issue in this suit will likely be whether Scott likes or dislikes or respects or doesn't respect ██████████, who is friends with Eckert and Bob Padmore, the person who nominally made the decision about whether or not to hire Scott for the position in the Public Works-

15

Engineering department of the City in 2012. Scott contends that it would be unfair to preclude her from answering truthfully about the reasons that she and ██████████ are not close.

I find that the challenged evidence concerning ██████████ has only slight, if any, probative value on any of the elements of Scott's remaining retaliation claim. *See* FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001 (explaining the Rule 403 balancing test); *see also Musoff*, 773 F.3d at 918 (stating the elements of a retaliation claim). Indeed, Scott's assertions that such evidence is relevant to show the "tone" and "culture" of Eckert's administration and the "lore" among City employees about Eckert's conduct strongly suggests that the real purpose of the evidence is to paint Eckert as a "bad person" to focus on his character or reputation, and to assert that he acted in accordance with that character, rather than on any acts properly at issue in this case. *See* FED. R. EVID. 404(a) (prohibiting admission of evidence of character to prove that a person acted in accordance with that character). In contrast, such evidence has a very substantial potential for unfair prejudice, because it would misdirect the jurors, enflame their passions in response to behavior of Eckert and others that has little relevance to Scott's remaining claims, and cause jurors to decide the case on the basis of their emotional response to Eckert's conduct with ██████████ or ██████████'s alleged sexual attraction to Scott, rather than on the basis of the evidence concerning the alleged retaliation by Eckert and the City. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900.

This part of Eckert's Motion In Limine is granted.

### 2. *Hearsay testimony from Rhonda Capron*

Next, Eckert seeks to exclude testimony from Rhonda Capron regarding hearsay statements by Scott and others. Eckert explains that Ms. Capron is a city council member and a friend of Scott's family and that, at her deposition, Ms. Capron testified regarding

16

a number of statements of Scott and others that had been made to her about Eckert's conduct toward Scott and others. Eckert contends that all of these statements are hearsay for which there is no applicable exception. Scott contends that this testimony is admissible pursuant to Rule 801(d) of the Federal Rules of Evidence, because she is going to testify and is subject to cross-examination about these statements, the statements are consistent with her testimony, and they will be offered to rebut any implication of recent fabrication. She also contends that Ms. Capron's testimony will be offered to demonstrate Scott's then existing mental and emotional condition, so that such testimony is admissible pursuant to Rule 803(3). Scott also contends that she met with Ms. Capron to start the process of complaining about misconduct under the City's sexual harassment policy. She contends that various of the statements show the existence of a hostile environment created by the defendants that was known to Scott and others and shows Eckert's use of his office and power to effect or to conceal his harassment.

Again, I conclude that, at least pre-trail, the admissibility of this evidence does not depend upon whether or not it is hearsay or is excepted or exempted from the hearsay rule, but upon the balance of the probative value of this evidence against its potential for prejudice. Where Scott contends that she is available to testify about the matters that Ms. Capron would testify that Scott reported to her, Ms. Capron's testimony has very little probative value. Moreover, none of the statements at issue has much probative value on the matters at issue in this case, where there is no sexual harassment claim at issue, the defendants have represented that they will not contest that Scott had a reasonable, good faith belief that she was complaining about sexual harassment in 2004, and the evidence sheds little or no light on the contested issue of whether there is a causal connection between Scott's complaints in 2004 and the allegedly retaliatory conduct in 2012. *See* FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001 (explaining the Rule 403 balancing test); *see also Musoff*, 773 F.3d at 918 (stating the elements of a retaliation

17

claim). Again, such evidence has a very substantial potential for unfair prejudice, because it would misdirect the jurors, enflame their passions in response to behavior of Eckert and others that has little relevance to Scott's remaining claims, and cause jurors to decide the case on the basis of their emotional response to the conduct described in the statements at issue, rather than on the basis of evidence concerning the alleged retaliation against Scott by Eckert and the City. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900.

This is not to say that Scott could not offer testimony from Ms. Capron about statements that Scott previously made to her *in rebuttal*, if the City does, indeed, challenge as a recent fabrication current testimony of Scott on the same subjects. In that situation, Ms. Capron's testimony about Scott's prior statements would likely be admissible. *See* FED. R. EVID. 801(d)(1)(B)(i). Scott cannot offer such testimony *in anticipation* of a challenge of recent fabrication, however.

This part of Eckert's Motion In Limine is granted.

### 3. *Testimony of Julie Eckert*

The third category of evidence that Eckert seeks to exclude is testimony by his wife, Julie Eckert. That testimony concerned Mrs. Eckert's employment in Sioux City; the school attendance of her children in Sioux City and Mt. Shasta (where the Eckerts now reside); the health and residence of the Eckerts' mothers; the Eckerts' family homes and standards of living in Sioux City and Mt. Shasta; Mrs. Eckert's understanding of Eckert's job responsibilities in Sioux City and Mt. Shasta; whether Eckert knew or had social relationships with City council members, City employees or their spouses; whether Eckert had knowledge in 2004 of complaints made against Eckert; and Mrs. Eckert's opinions as to veracity of other witnesses. Eckert contends that none of this testimony makes it more or less probable that the failure to hire Scott for the Administrative Assistant position in 2012 was retaliatory. Scott counters that the testimony from

18

Mrs. Eckert that she intends to offer is that Mrs. Eckert was the boss of Craig Berenstein's wife at the time that Mr. Berenstein was on the City Council. She argues that this evidence tends to show that Mr. Berenstein had a financial and personal relationship with Eckert and that it would not have benefitted either Mr. Berenstein or Eckert for a proper investigation of Scott's claims to result in findings against Eckert. Likewise, Scott argues that this testimony will show that another City council member, Dave Ferris, who was supposed to investigate Scott's complaint, had a personal friendship with the Eckerts, showing that Mr. Ferris might have been motivated to cover up for Eckert, then and now. Finally, Scott contends that Mrs. Eckert's testimony that she met ███████████ and ████████████, two women that Scott contends Eckert "hit on," shows Eckert's connections to those two women and his audacity and capacity for deceitfulness in introducing them to his wife.

Again, I struggle to see how most of the testimony of Mrs. Eckert cited by the City has much—indeed, any—probative value on the matters at issue in this case. *See* FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001 (explaining the Rule 403 balancing test); *see also Musoff*, 773 F.3d at 918 (stating the elements of a retaliation claim). Therefore, most of the testimony cited by the City also would waste time and is excluded on that basis. FED. R. EVID. 403. The exception is testimony by Mrs. Eckert about whether Eckert knew or had social relationships with City council members, City employees, or their spouses. If Scott first demonstrates the involvement of specific City employees or City officials—such as Mr. Berenstein and/or Mr. Ferris—in the investigation of or decisions about Scott, then testimony from Mrs. Eckert based on her first-hand knowledge of and observations about friendships and personal relationships or professional relationships bewtween or among Eckert and those City officials and City employees would likely be admissible.

With this exception, this part of Eckert's Motion In Limine is granted.

## 4.  *Evidence of religious affiliations*

Finally, Eckert seeks to exclude evidence of the religious affiliations of current and former City employees, council members, and their families.  Eckert contends that such evidence is wholly irrelevant to any issue in this case and could be unfairly distracting, incite prejudice, and waste time.  Scott contends, however, that this evidence will show that there seemed to be a connection at City Hall amongst people of the Catholic religion.  For example, Scott argues that Eckert used his Catholic connections to find associates at City Hall and that, because Scott was not Catholic, she was an outsider, not a member of the "in crowd."  She argues that "artificially" cutting out these relationships would deprive the factfinder of important information about the connections, loyalties, motivations, and credibility of various people.

One of the flaws with Scott's argument for admissibility of this evidence is apparent in Scott's assertion that there "seems to be" a "Catholic connection" among members of the "in crowd" and key actors in this case.  Such evidence provides, at best, only a very weak inference of bias or improper motives of various actors, smacking of little more than innuendo.  FED. R. EVID. 403.  On the other side of the Rule 403 scale, such evidence has a very substantial potential for unfair prejudice, because it would misdirect the jurors, enflame their passions (whether pro- or anti-Catholic) while having little relevance to Scott's remaining claims, and cause jurors to decide the case on the basis of their emotional response religious affiliations, rather than on the basis of evidence concerning the alleged retaliation by Eckert and the City.  *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900.  In contrast, evidence that Eckert and other City officials or City employees belonged to the same faith or denomination or "knew each other from church" or that Eckert sought out such people to work with in City Hall—without mention of what that faith, denomination,

20

or church that was—does reasonably provide an inference of bias that Scott will be allowed to present.

This part of Eckert's Motion In Limine is granted only to the extent that Scott may not elicit evidence that Scott used his "Catholic connections" or favored a "Catholic in crowd," or the specific faith, denomination, or church of any City officials or City employees. On the other hand, Scott may elicit evidence that Scott and various City officials or City employees belonged to the same faith or denomination or "knew each other from church" or that Eckert sought out such people to work with in City Hall— without mention of what that faith, denomination, or church that was.

### 5. *Summary*

Eckert's February 17, 2015, Motion In Limine (docket no. 70) is granted as to all four categories of evidence that he challenges, with only the limited exceptions specifically stated above.

### D. *The City's Motion In Limine*

In its Motion In Limine, in which Eckert has joined, the City seeks to exclude no less than forty-two categories of evidence. Fortunately, many of the challenged categories of evidence can be grouped together and resolved on similar grounds.

### 1. *Evidence of actions I found were "not materially adverse"*

The first category of evidence that the City seeks to exclude is evidence of actions that I held were "not materially adverse" in my Summary Judgment Ruling. The defendants argue that, in my Summary Judgment Ruling, I held that several alleged actions of the defendants, which they enumerate in their Motion In Limine and supporting brief, were "not materially adverse" employment actions, as a matter of law. Consequently, the defendants argue that all evidence regarding these actions should be excluded as irrelevant; indeed, they argue that such evidence cannot even constitute

Case 5:13-cv-04064-MWB   Document 105-1   Filed 04/06/15   Page 21 of 37

relevant "background evidence," because the actions are *not* discriminatory or retaliatory. Scott contends that my finding that these actions were "not materially adverse" does not equate to a finding that she cannot use them to show a motive and pattern of activity leading up to the 2012 event that will be submitted to the jury. She argues that I expressly noted that conduct that is not "actionable" may, nevertheless, be evidence that helps to bridge the causation "gap." She contends that the actions at issue demonstrate that the defendants took escalating adverse action against her. She also argues that the jury needs to hear this evidence in order to get a complete perspective on what happened to her between the time of her complaints and the 2012 adverse action.

I believe that Scott has misread, or misconstrued the impact of, my Summary Judgment Ruling as it relates to this evidence. In that Ruling, I did not hold that any and every action, however slightly negative an employee might perceive it to be, is admissible as "background evidence" or as evidence that might help bridge the causation "gap" between protected activity and allegedly retaliatory action. Rather, I held that, under *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), "untimely discriminatory acts may constitute relevant 'background evidence in support of a timely claim.'" Summary Judgment Ruling at 24, *published at Scott*, ___ F. Supp. 3d at ___, 2014 WL 7274929 at * 12 (quoting *Saulsberry v. St. Mary's Univ. of Minnesota*, 318 F.3d 862, 866 (8th Cir. 2003), in turn citing *Morgan*, 536 U.S. at 113). What I somewhat inartfully called "untimely discriminatory acts" were discrete discriminatory acts that were no longer "actionable" only because the time to file an administrative charge concerning those acts had run before any charge was filed. *See id.* The actions that I held were "not materially adverse," on the other hand, were not discrete discriminatory acts that might have supported a claim, if they had been timely charged, but actions that were not sufficiently adverse to be the basis for or evidence to support a harassment, discrimination, or retaliation claim *at all*. To put this conclusion into the rubric of Rule

22

403, the actions that I found were "not materially adverse" have little or no probative value, and whatever probative value they have is outweighed by their potential for unfair prejudice—particularly in the form of distraction from the issues, misleading the jurors, wasting time, and inviting a decision on an improper basis. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900.

This part of the City's Motion In Limine is granted.

### 2.     *Eckert's harassing and retaliatory conduct towards others*

Several of the categories of evidence that the City seeks to exclude concern Eckert's alleged harassment of or retaliation against people besides Scott.  These categories of evidence are amenable to some additional subgrouping.

The City seeks to exclude as irrelevant and/or unfairly prejudicial the following evidence of Eckert's alleged harassment of other City employees, using the letter headings from the City's brief in support of its Motion In Limine:  (H) testimony of ████████████████ that Eckert ignored her husband when her husband dropped her off at the airport for a trip with Eckert and did not flirt with her thereafter, offered to suggest Eckert retaliated against her; (L) evidence concerning Eckert sending ████████ ████ an e-mail telling her she was "beautiful"; (S) evidence that ████████ believed that Eckert was "overly friendly," for example, in e-mails to her; (T) evidence of e-mails sent to ████████ by Eckert that ████████ believed showed Eckert was "trying to come on" to her; (U) evidence that, after ████████████ started working as ██ ████████████, Eckert flirted with or "came on" to her; (V) evidence from Connie Anstey about ████████████'s complaints of Eckert propositioning her; (X) evidence from Paul Nolan about statements of ████████ about Eckert relating to a trip to Washington, D.C.; (AA) Roger Caudron's testimony about interactions of ████████████ and Eckert on a trip to Washington, D.C.; (EE) any testimony from Jenn Pavone, a former employee of the City's Events Facilities Department, on the

ground that she simply has no knowledge of any relevant events, but whom Scott contends was a target of Eckert's sexual interest; (MM) testimony from any witness that Eckert was a "womanizer," "flirt," "really liked women," or had a reputation as a "womanizer," "flirt," or someone who "really liked women"; and (NN) testimony from any witness about alleged prior acts of sexual harassment by Eckert. The City argues, in essence, that none of this evidence relates to events sufficiently similar to those relating to Scott's retaliation claim to show anything other than Eckert's "propensities," that the evidence is not probative of whether it is more likely than not that the defendants retaliated against Scott in 2012 for reporting sexual harassment by Eckert in 2004, and that it is all unfairly prejudicial, as it is simply offered to show Eckert in a bad light. Scott argues that this evidence will show the pattern of activity of the City and Eckert, including Eckert's tendency to favor those who went along with his sexual "play" and to retaliate against those who did not, and that such evidence will impeach any testimony by Eckert that his relationships with female employees were always "professional."

Again, I struggle to see how any of the challenged evidence has much—indeed, any—probative value on the matters at issue in this case. *See* FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001 (explaining the Rule 403 balancing test); *see also Musoff*, 773 F.3d at 918 (stating the elements of a retaliation claim). Even as Scott characterizes the inferences that can be drawn from such evidence, those inferences relate to Eckert's character and reputation, and the evidence is inadmissible for such purposes. *See* FED. R. EVID. 404(a). Evidence of Eckert's alleged tendency to be vindictive or hold a grudge, likewise, is inadmissible evidence of character or reputation. Even as "bad acts" evidence under Rule 404(b), it is still amenable to the Rule 403 balancing test. Such evidence provides, at best, only very weak inferences tying the failure to hire Scott as an Administrative Assistant in 2012 to her complaint of sexual harassment in 2004, smacking of little more than innuendo. FED. R. EVID. 403. On the other side of the Rule 403

scale, such evidence has a very substantial potential for unfair prejudice, because it would misdirect the jurors, enflame their passions in response to behavior of Eckert and others that has little relevance to Scott's remaining claims, and cause jurors to decide the case on the basis of their emotional response to the conduct described in the statements at issue, rather than on the basis of evidence concerning the alleged retaliation by Eckert and the City against Scott. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900. This evidence is excluded.

The City also seeks to exclude as irrelevant and/or unfairly prejudicial the following evidence of Eckert's alleged sexual harassment or improper sexual conduct towards women who were not City employees: (I) testimony of ███████████ ███████ (and her former boss, Roger Caudron) concerning Eckert improperly touching her when she worked for ███████████; (U) testimony from ███████████ relating to Eckert's flirtatiousness in his dealings with her when she was ███████████ ████, before she took a position as ███████████; (GG) testimony from ███████████ about Eckert's over-flirtatiousness with her in relation to her employment with ███████████, not with the City; and (KK) testimony of ███████ ███████████ that, while she was employed with ███████████, she had an interaction with Eckert that made her feel as though he had been "undressing" her with his eyes. Again, the City argues that this evidence has no or only weak probative value and is outweighed by its potential for unfair prejudice. Again, Scott argues that this evidence shows, from the number and diversity of the women that Eckert sexually harassed, that Eckert was relentless in his pursuit of women who were potentially vulnerable to the power of his office and that such evidence will impeach Eckert's accounts of his conduct.

Because this evidence does not relate to workplace harassment of City employees, I find its probative value on any matters at issue in this case even more tenuous. *See*

25

FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001 (explaining the Rule 403 balancing test); *see also Musoff*, 773 F.3d at 918 (stating the elements of a retaliation claim). Even as Scott characterizes the inferences that can be drawn from such evidence, those inferences relate to Eckert's character and reputation, and the evidence is inadmissible for such purposes. *See* FED. R. EVID. 404(a). Such evidence provides, at best, only very weak inferences tying the failure to hire Scott as an Administrative Assistant in 2012 to her complaint of sexual harassment in 2004, smacking of little more than innuendo. FED. R. EVID. 403. On the other side of the Rule 403 scale, such evidence has a very substantial potential for unfair prejudice, because it would misdirect the jurors, enflame their passions in response to behavior of Eckert and others that has little relevance to Scott's remaining claims, and cause jurors to decide the case on the basis of their emotional response to the conduct described in the statements at issue, rather than on the basis of evidence concerning the alleged retaliation by Eckert and the City against Scott. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900. This evidence is excluded.

This is not to say that there are *no* circumstances in which evidence of Eckert's alleged harassment of other City employees or his alleged harassment of or improper sexual conduct towards women who were not City employees would be admissible. Rather, some reasonable amount of evidence of such improper conduct by Eckert would likely be admissible in rebuttal, if Eckert testifies that his relationships with female City employees or women that he met in other professional contexts were always "appropriate" or "professional" or a similar description. Reasonable limits on such evidence would allow Scott a fair opportunity to rebut any such testimony by Eckert while limiting the potential for unfair prejudice to the defendants from such evidence. *Cf. Lemon*, 239 F.3d at 972 (recognizing that limiting the amount of evidence, while excluding evidence that might prejudicially divert the jury's attention from matters

26

properly at issue, may limit prejudice). The precise amount of such evidence that would be "reasonable" depends upon the circumstances at trial.

The City also seeks to exclude evidence of Eckert's alleged retaliation against others for their support of or friendly relationships with Scott. That evidence consists of the following: (P) evidence that Aaron Kraft was denied a position as the City's Public Works Director because, Kraft believed, Eckert was jealous of Kraft's relationship with Scott, and that after Kraft left City employment to work for American Water Enterprises, a contract operator for the City, there was a downturn in his relationship with the City; and (HH) testimony from Michael Skaggs, who was a City employee, that his wife, Eckert's Administrative Assistant, was treated unfairly by Eckert because she was a witness in support of Scott's case. If such evidence is somehow relevant, the City argues that it is far more unfairly prejudicial. Scott argues that this evidence exposes a pattern and practice of Eckert using his power to favor those who went along with him and to thwart those who did not.

Evidence amounting to no more than Aaron Kraft's assertion or belief that Eckert was retaliating against him for his friendly relationship with Scott smacks of the same sort of innuendo that is more prejudicial than probative, and is excluded. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900. If Mr. Kraft (or Scott) has more substantial evidentiary basis from which jurors could conclude that Kraft was the target of retaliation by Eckert just because of Kraft's relationship with Scott, that might be evidence from which jurors could reasonably infer

27

that Eckert was vindictive towards Scott's friends and associates and continued to harbor a retaliatory animus toward Scott.[1]

While evidence *from Ms. Skaggs* might be probative as to Eckert's continued retaliatory animus toward Scott, years after Scott's complaint of sexual harassment, evidence *from Mr. Skaggs* is both far less probative and likely to be fraught with hearsay (or double hearsay) problems for which Scott has not offered any exception or exemption. *See* FED. R. EVID. 801, 802, 803. This evidence is excluded.

### 3. *Evidence of harassment of others by others*

The City seeks to exclude evidence of harassment of others by others, consisting of the following: (B) evidence of sexual harassment complaints against Aran Rush, the former Executive Director of the City's Events Facilities Department; (T) evidence of Erika Newton's interactions with Aran Rush; and (G) testimony from Kelly Bach, the City's Parks and Maintenance Field Supervisor, about incidents involving the City's former ███████████████████████, acting in a sexually inappropriate way around City employees. The City argues that none of this evidence makes it any more likely that Scott was retaliated against when someone else was hired for the Administrative Assistant position in 2012. Scott argues that the evidence regarding Aran Rush will show that Eckert used his authority to exonerate his friend, Mr. Rush, from allegations of sexual harassment, that Eckert allowed such harassment to continue, and that evidence from Kelly Bach will show that the City tolerated inappropriate sexual behavior.

---

[1] I do not believe that Mr. Kraft's testimony about Eckert allegedly telling him that he was "too green" to become the new Public Works Director, then purportedly implying that Mr. Kraft's relationship with Scott was bad for Mr. Kraft's career, qualifies as sufficiently substantial evidence beyond Mr. Kraft's opinion that Eckert thwarted Mr. Kraft's career because of, or in retaliation for, or because Eckert was "jealous" of Mr. Kraft's relationship with Scott, as Scott apparently contends.

Such evidence has, at best, only tenuous probative value to the question of whether Scott was retaliated against in 2012 for complaining about sexual harassment in 2004. FED. R. EVID. 403. On the other side of the Rule 403 scale, such evidence has a very substantial potential for unfair prejudice, because it would misdirect the jurors, enflame their passions in response to behavior of others that has little relevance to Scott's remaining claims, and cause jurors to decide the case on the basis of their emotional response to the conduct described in the statements at issue, rather than on the basis of evidence concerning the alleged retaliation by Eckert and the City against Scott. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900. This evidence is excluded.

### 4. *Rumors of affairs and sexual misconduct*

The City also seeks to exclude various categories of evidence concerning rumors of affairs and sexual misconduct by City officials, consisting of the following: (C) testimony about rumors of an affair between Eckert and ███████████ and that Eckert was the father of ████████'s child (which both deny); (D) evidence from the daughters of Ann Marie Skaggs, Eckert's Administrative Assistant, that Eckert had sexually suggestive interactions with them, including gifts and Facebook messages and driving by their house; (F) testimony from Ann Marie Skaggs about an alleged affair between City Council Members ██████████████████████;[2] (Q) testimony

_____

[2] Scott does not object to exclusion of this category of evidence, as cited by the City, consisting of Ms. Skaggs's testimony about an alleged affair between ██████ ████████████████. Thus, this is a rare example of an undisputed category of evidence that will be excluded. On the other hand, Scott contends that she will offer testimony from Ms. Skaggs about the close relationship between Eckert, ████████ ██████, to show that Eckert did know of Scott's complaint of sexual harassment against him, contrary to some of his contentions. The City has not challenged the evidence from Ms. Skaggs that Scott cites, and I believe that it is likely admissible.

29

from former City Council Member Tony Drake about rumors about Eckert's misconduct prior to 2004; (R) evidence from Melinda Trobaugh regarding Eckert's "really bad" reputation with women; (JJ) evidence from Michelle Brady, a project manager for the City, about rumors regarding Eckert's conduct toward ████████ and ██████ ██████; and (O) any questions to current and former city officials and employees, such as questions about their marital histories, that are intended to embarrass and/or harass them. The City argues that such evidence should be excluded as irrelevant, more prejudicial than probative, and hearsay. Scott contends that some of this evidence is not hearsay, but recounts statements of people subjected to Eckert's sexually predatory conduct and his abuse of his position, and statements from the witnesses' own observations of Eckert's conduct.

Because whether or not Scott had a good faith, reasonable belief that Eckert sexually harassed her is not at issue in this case, and the evidence in question sheds no light on the likelihood that Eckert retaliated against Scott for a sexual harassment complaint, it is difficult to see how the evidence in question has any probative value in this case. FED. R. EVID. 403. It is, instead, simply in keeping with what appears to be Scott's intention to build a case on negative innuendo. Such evidence also has a very substantial potential for unfair prejudice, because it would misdirect the jurors, enflame their passions in response to behavior of others that has little relevance to Scott's remaining claims, and cause jurors to decide the case on the basis of their emotional response to the conduct described in the statements at issue, rather than on the basis of evidence concerning the alleged retaliation by Eckert and the City against Scott. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900. Finally, Scott has not convinced me that any comments about rumors or reporting statements of others are not simply inadmissible hearsay. *See* FED. R. EVID. 801, 802, 803. This evidence is excluded.

## 5.  *Hearsay statements*

The City specifically attacks as hearsay three other categories of evidence: (J) testimony from Gerri Breyfogle, Scott's mother, that Scott purportedly made to her at the time of the 2004 investigation; (K) testimony from Ms. Breyfogle regarding her conversation with Patti Bolles in 2008 or 2009 in which Ms. Bolles described a conversation in which Eckert said he could get anyone a job with the City or make sure they never worked for the City; and (X) testimony from Paul Nolan, the City's Utilities Director from 1995 until 2005, about ███████████'s statements about Eckert during a trip to Washington, D.C.  The City contends that there is no hearsay exception that would make any of this testimony admissible.  Scott argues that Ms. Breyfogle's testimony will confirm that Scott did meet with Dave Ferris and Karen Van De Steeg about Eckert's sexual harassment, which goes to the heart of her contention that she engaged in protected activity, and that it is admissible as a prior consistent statement. Scott also contends that Ms. Breyfogle's report of Ms. Bolles's report of Eckert's statement is not offered for the truth of the statements recounted, but to show the continuing common knowledge that Eckert controlled the City and could retaliate at will. Finally, Scott contends that Mr. Nolan's testimony demonstrates Eckert's reputation as a manipulator.

Scott has not shown that the testimony actually identified by the City in categories (K) and (X) is not hearsay or is excepted or exempted from the hearsay rule, and those categories of evidence are, consequently, inadmissible.  *See* FED. R. EVID. 801, 802, 803.  Indeed, Ms. Breyfogle's report of Ms. Bolles's report of what Eckert said is double hearsay.  Ms. Bolles's report of Eckert's statement might be an admission by Eckert exempted from the hearsay rule, *see* FED. R. EVID. 808(d)(2)(A), and might also be admissible, pursuant to a hearsay exception, to show his *belief* that he could act with complete autonomy and impunity, *see* FED. R. EVID. 803(3).  Ms. Bolles is not listed as

31

a witness for Scott, however, so she apparently is unavailable to report Eckert's statement herself. What is missing in this case of double hearsay is a basis to find that the second layer of hearsay, Ms. Breyfogle's report of Ms. Bolles's report, falls within a hearsay exception. Scott has not explained what that basis might be. The truth of the matter asserted in Ms. Breyfogle's report is that Ms. Bolles said that Eckert made the statement, and I have not found an exception for such a hearsay statement.[3] Even if these statements are admissible over hearsay objections, however, these statements are no more than marginally probative of any issue in the case and more unfairly prejudicial than probative. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900. Again, innuendo is not admissible. Whether the statements at issue in category (J) are admissible, as evidence of a prior consistent statement, *see* FED. R. EVID. 801(d)(1), will depend upon whether or not the City challenges at trial Scott's contention that she reported Eckert's harassment to Mr. Ferris and/or Ms. Van De Steeg. Thus, evidence in categories (K) and (X) are excluded, but ruling is reserved as to category (J).

### 6. *Witnesses' opinions*

The City seeks to exclude three categories of "opinion" evidence: (W) any testimony from RoseAnn Lienhard, a former assistant City attorney, about her opinions on the investigation of Eckert in 2004, in which she did not participate; (Y) any testimony from Mary Ann Higgins or Tim Higgins about their opinions about the City or Eckert; and (Z) any testimony from Brad Baldwin, a Labor Supervisor for the City, on his opinions about the City's investigation in 2004 or its hiring decision in 2012, in which he was not involved. The City contends that any such opinions are not relevant and are

---

[3] Ms. Bolles apparently did not state to Ms. Breyfogle her *belief* that Eckert controlled employment in the City, which might qualify as a statement concerning Ms. Bolles's then-existing state of mind. FED. R. EVID. 803(3).

more prejudicial than probative. Scott contends that these witnesses have first-hand knowledge of the conduct of various people and that they were aware of the rumors and grumbles within the City about Eckert's conduct.

Recognizing my prior rulings, above, on the inadmissibility of rumors and innuendo, and Scott's contentions that these witnesses, nevertheless, have admissible opinions to offer, I cannot properly assess, until trial, whether these witnesses can provide either relevant or admissible opinions based on their first-hand observations. *See* FED. R. EVID. 701 (admissibility of opinions of lay witnesses); FED. R. EVID. 403. My reluctance to make a blanket ruling of inadmissibility, however, should not be mistaken as an exception allowing any and all testimony by these witnesses. Ruling is reserved on these categories of evidence.

### 7. *Evidence regarding the sufficiency of City investigations, policies, or procedures*

The City seeks to exclude evidence regarding its investigations, policies, or procedures in 2014. First, the City seeks to exclude, as category (CC), testimony by attorney Alan Fredregill regarding a 2014 investigation of certain issues regarding Scott's employment that did not result in any disciplinary action, because the City does not intend to raise the issue, and, as category (PP) other evidence regarding the 2014 investigation of possible misconduct by Scott. The City argues that these categories of evidence relate to irrelevant matters or are more prejudicial than probative. Scott represents that, at this time, she does not intend to call Alan Fredregill, but that she does intend to offer evidence concerning the City's investigation of her alleged misconduct in 2014 as evidence of the City's continued scrutiny and investigation of her work to show the City's motive to continue to retaliate against her.

In light of the parties' agreement that neither intends to call Mr. Fredregill in its case-in-chief, the challenge to his testimony is denied as moot, without prejudice to

reassertion if a party calls him to testify, after all. To the extent that Scott intends to offer evidence regarding the 2014 investigation of her alleged misconduct, which ended in no disciplinary action, to show continued scrutiny and retaliation, such evidence appears to me to be, at best, only marginally probative, but plainly prejudicial, as inviting a "mini-trial" on an incident that did not result in any disciplinary or other adverse employment action against Scott. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900. This evidence is excluded.

The City also seeks to exclude, as category (II), evidence regarding the sufficiency of the investigation concerning Scott's administrative complaint of retaliation, and, as category (OO), evidence regarding the sufficiency of the City's anti-harassment policies or procedures. Scott contends that evidence of the inadequacy of the City's investigation of her administrative complaint in 2014 and the insufficiency of the City's anti-harassment policies and procedures is admissible to show a pattern and practice of retaliatory action and approval of Eckert's conduct and to corroborate Scott's version of events and supports her credibility.

Scott's retaliation claim does not require her to rebut a contention by the City that it "did its best" to prevent retaliation. *See Musoff*, 773 F.3d at 918 (stating the elements of a retaliation claim). Nevertheless, evidence of the City's investigation of her complaint concerning retaliation in 2012 and the City's policies and procedures, particularly if it shows inadequacies, is relevant to suggest continuing retaliation and attempts to sweep Scott's complaint under the carpet. Thus, this evidence is *not* excluded.

### 8. *Evidence of other cases or claims against the City*

The last discernible grouping of categories of evidence that the City seeks to exclude concerns evidence of other cases or claims against the City, consisting of the following: (FF) evidence regarding *Davis v. City of Sioux City*, 115 F.3d 1365 (8th Cir. 1997); and (LL) evidence concerning other complaints of discrimination, harassment, or

34

retaliation made against the City. The City argues that none of this evidence bears sufficient similarity to any claims by Scott and that it is all more prejudicial than probative, where Scott has dismissed her claim for punitive damages. Scott represents that she does not intend to bring up the *Davis* case in her case-in-chief, but may use it for impeachment, if the defendants deny prior findings of sexual harassment or retaliation against the City. Scott contends that evidence of other complaints of discrimination, harassment, or retaliation against the City may be relevant under Rule 404(b), but that the City has not sufficiently identified the evidence in question.

I agree with the parties that the *Davis* case does not appear to be relevant in either parties' case-in-chief, so evidence of that case will be excluded, without prejudice to a demonstration of relevance as rebuttal evidence. I agree with Scott that the City's description of the evidence in category (LL) does not provide sufficient basis for me to determine the admissibility of any specific incident of prior discrimination, harassment, or retaliation, so that I reserve ruling on any such evidence until it arises during trial.

### 9. Miscellaneous categories of evidence

The City also seeks to exclude several categories of evidence that I can only group as "miscellaneous." The first such category, category (E), is any testimony by Ann Marie Skaggs that she believed that Eckert sent out an e-mail from her City e-mail address impersonating her in an attempt to "target" her. The City argues that this evidence is simply not relevant or is offered simply to show Eckert's alleged propensity to retaliate. Scott contends that this evidence is admissible to show a pattern of retaliation and Eckert's character trait of vindictiveness and retaliation. I find that the probative value of such evidence is tenuous, at best, but the potential for unfair prejudice from such evidence, in the form of distraction and waste of time over whether Eckert did or did not hijack Ms. Skaggs's e-mail, outweighs its marginal probative value. *See* FED. R. EVID. 403,

Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900. This evidence is excluded.

The City also seeks to exclude, as category (M), evidence that Eckert had an argument with his wife over his going to Buffalo Alice restaurant with Miss Iowa as irrelevant and more prejudicial than probative. Scott does not object to exclusion of this evidence, subject to reconsideration if the issue becomes relevant. I conclude that such evidence is inadmissible pursuant to Rules 402 and 403 and that Scott will have to make a demonstration of proof of the relevance and admissibility of such evidence if she decides to attempt to offer it at trial.

The City also seeks to exclude, as category (N), evidence that the defendants are working together, under a Joint Defense Agreement, as irrelevant and more prejudicial than probative. Scott contends that this evidence is relevant and admissible to show that the defendants have "gotten their stories together" to present a unified front. I believe that evidence of any Joint Defense Agreement has, at best, only marginal probative value—where the extent of the defendants' joint defense will be apparent from their presentations in court—and potentially more unfairly prejudicial than probative, primarily as a waste of time and distraction. *See* FED. R. EVID. 403, Advisory Committee Notes; *see also Bell*, 761 F.3d at 912; *Adams*, 401 F.3d at 900. This evidence is excluded.

Finally, the City also seeks to exclude, as category (DD), any testimony from Stacey Hall, Eckert's trial counsel and representative in responding to Scott's Iowa Civil Rights Commission complaint, on the ground that she has no non-privileged information, so that her testimony should be excluded pursuant to Rule 501. Scott represents that she does not foresee calling Ms. Hall, but reserves the right to do so. I conclude that such evidence appears to be inadmissible pursuant to Rule 501 and that Scott will have to make a demonstration of proof of the relevance and admissibility of such evidence if she decides to attempt to offer it at trial.

### 10. Summary

With the few exceptions specifically identified above, the City's February 18, 2015, Motion In Limine (docket no. 72), joined by Eckert on February 18, 2015, *see* (docket no. 73), is granted.

### III. CONCLUSION

Upon the foregoing,

1.    Plaintiff Scott's February 17, 2015, Motion In Limine (docket no. 68), as supplemented, on February 25, 2015, in Scott's First Amendment To Motion In Limine (docket no. 75), is **granted** to the extent expressly set out above;

2.    Defendant Eckert's February 17, 2015, Motion In Limine (docket no. 70) is **granted** as to all four categories of evidence that he challenges, with only the limited exceptions specifically stated above;

3.    The defendant City's February 18, 2015, Motion In Limine (docket no. 72), joined by Eckert on February 18, 2015, *see* (docket no. 73), is **granted in part, denied as moot in part, and reserved in part,** as expressly set out above.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about challenged evidence and to avoid disclosure of private information subject to a protective order, this ruling shall remain sealed, unless the court, on the motion of a party, directs that it be unsealed.

**IT IS SO ORDERED**.

**DATED** this 17th day of March, 2015.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA